### Pocono Manor Association et al. *v.* Allen et al., Appellants.

Argued January 11, 1940. Before Schaffer, C. J.,
Maxey, Drew, Linn and Patterson, JJ.

*Samuel A. Goldberg,* with him *A. Greenwald Gearhart,* and *Wolf, Block, Schorr & Solis-Cohen,* for appellants.

*John E. Forsythe, Jr.,* with him *C. Raymond Bensinger,* and *MacCoy, Brittain, Evans & Lewis,* for appellees.

Opinion by Mr. Justice Maxey, March 25, 1940:

The Pocono Manor Association and Herman V. Yeager (the latter being the owner of a lot situated fifty feet across a highway from lots owned by defendants), filed a bill to enjoin defendants from converting a private dwelling on their land into a house of four or five separate apartments. The facts were presented in a case stated. The legal question involves the construction of certain building restrictions.

The defendants are owners in fee simple of three lots of ground containing a dwelling house. In 1902 the Pocono Manor Association acquired in the Pocono Mountains an extensive area of land, a part of which it divided into lots and sold. In 1910 it sold three lots to Sarah H. Allen. In 1928 she sold to the defendants these

lots; on them is the structure in controversy. The association inserted in all its conveyances of lots the following conditions and restrictions: "Under and subject, nevertheless, to the express conditions and restrictions following, viz.: that at no time hereafter shall any part of the ground hereby conveyed be used or occupied for the distillation or brewing, manufacture or sale of any malt, vinous, spirituous or intoxicating liquors, nor for any offensive use whatever, but the same shall be used only for the erection and maintenance thereon of buildings for cottage residences and dwelling purposes, and not for any commercial, manufacturing or business use whatsoever; . . . and provided further, that not more than one cottage or dwelling house shall be erected upon any lot hereby conveyed."

The association still owns the major portion of its original holdings. On an unrestricted portion of this land it owns and operates Pocono Manor Inn, a castellated structure in keeping with its setting of mountains and forests. It is agreed that the community affected "is composed entirely of single-family cottages and dwellings, and there are no apartment buildings or multiple dwellings whatsoever in any part of" it.

Plaintiffs object to defendants' carrying out their plans to convert this dwelling into apartments, as violative of the restrictions pleaded and as detrimental to plaintiffs' property. Defendants contend that the challenged acts are neither detrimental nor in contravention of the restrictions.

The court below entered its decree nisi restraining the proposed acts. Defendants' ensuing exceptions were dismissed and a final decree entered. This appeal followed.

When the defendants accepted the deed of Sarah H. Allen conveying the premises in controversy, subject to the stated restrictions, these became "the law" as to the future use of the premises. Therefore, in interpreting this restriction the same logical processes are applied as in interpreting statutes. It is a rule that "the language

of a statute must be read in a sense which harmonizes with the subject matter and . . . [its] general purpose and object. . . . The general design and purpose of the law is to be kept in view and the statute given a fair and reasonable construction with a view to effecting its purpose and object, even if it be necessary, in so doing, to restrict somewhat the force of subsidiary provisions that otherwise would conflict with the paramount intent": 25 R. C. L., sec. 253, page 1013.

It is a legitimate inference that those who organized the Pocono Manor Association and who made of the area it developed an attractive resort had as their purpose the promotion of the erection of habitations for those who seek places in the country where living conditions are in complete contrast with the congested conditions of metropolitan areas. One of the features of city dwelling is the congestion of human beings in multiple family houses. For practical reasons such houses have become the necessary concomitants of city life, but in the "wide open spaces" of the country they have no excuse for being. One who goes to the woods, fields and mountains to escape the congestion and tensions of urban habitations, does not expect to find in his chosen refuge that herding of individuals under single roofs which is so common in the populous area he fled from. Houses adapted to the occupancy of several families are incongruous to the characteristic charm of rural life. That during the forty years' existence of this Pocono Manor community it has not contained any apartment house indicates that houses of the size and structure required for the domicile of several families are regarded by those who constitute that community, as unsuitable, unwelcome and as tending to defeat the commendable social ends for which the colony was established.

We believe that the restriction invoked constitutes a legal barrier to the threatened intrusion. The only buildings permitted on the restricted land are those "for cot-

tage residences and dwelling purposes." The dominant idea in the phrasing is that of "cottage residences," and it is further stipulated that only *one* cottage or dwelling house" shall be upon a single lot. One-ness of family in habitation is encouraged; plurality of families in habitations is interdicted.

The general expression "dwelling purposes" follows the particular expression "cottage residences" and therefore the former expression is presumed to be restricted by the particular designation, and to include only things of the same kind as that enumerated. This court said in *Burns v. Coyne*, 294 Pa. 512, 516, 144 A. 667: "Where specific expressions are followed by those which are general, the latter will be confined to things of the same class as the former." The Superior Court in *Real Estate-Land Title & Trust Co. v. Bankers' Trust Co.*, 104 Pa. Superior Ct. 493, 495, 158 A. 634, said: "General terms are referable to the same kind of articles, as those enumerated," i. e., "those articles which are ejusdem generis."

There is no doubt about the meaning of the word "cottage." An apartment house or a multiple dwelling house is *not a* cottage. When defendants rely upon the words "building for dwelling purposes" as a passport for admitting their apartment house to this restricted area, they overlook the "cottage residences" limitation and ignore the rule (already referred to) as to an antecedent particularization limiting a succeeding generality. If any structure that comes within the words "buildings for dwelling purposes" is admissible in this area, then the "restriction" is no restriction at all and the authors of it did a vain thing for under that view no kind of structure in which human beings dwell could be excluded. Even a penitentiary or almshouse would qualify for admission to *such* a "restricted" area. Before a court will interpret a provision in a statute or in a contract in such a way as to lead to an absurdity or make the statute or contract ineffective to accomplish its

purpose, it will endeavor to find an interpretation which will effectuate the reasonable result intended. The interpretation of the restriction in question was so interpreted by the court below as to promote and not to defeat its obvious purpose. With that interpretation we agree.

In *Johnson v. Jones,* 244 Pa. 386, 90 A. 649, relied upon by the defendants, the governing word in the restriction there invoked was declared by this court to be "dwelling-house." It was held that the erection of an apartment house four stories in height, each story containing two separate apartments, was not violative of the restriction. We said: "A dwelling house is a house occupied as a residence, in distinction from a store, office or other building." In the instant case the governing words are "cottage residences." The word "cottage" implies a privacy and a family one-ness of occupancy which are not implied in the phrase "one dwelling house" as used in the restriction interpreted in *Hamnett v. Born,* 247 Pa. 418, 93 A. 505, and the phrase "a single dwelling house" as used in the restriction interpreted in *Rohrer v. Trafford Real Estate Co.,* 259 Pa. 297, 102 A. 1050. In all of these three cases invoked by the defendants, the structures in question were in large cities and the judicial interpretation of restrictive covenants was in harmony with their purposes. The interpretation appellants ask us to put upon the restrictive covenants in the instant case would palpably be in negation of those clauses' purposes.

In *Taylor et al. v. Lambert,* 279 Pa. 514, 124 A. 169, this court held that a restriction in a deed prohibiting the erection on a lot of ground of "a building or buildings designed for any other purpose than a private dwelling house" excluded the erection of an apartment house on such a lot. We said in that case: "In the term 'a private dwelling,' the word 'dwelling' restricts the character of building by eliminating all buildings for business purposes, such as stores, livery stables, garages, factories, and the like. The word 'private' further

restricts the buildings to be placed thereon by excluding all such as are used for residential purposes of a public character, like hotels and general public boarding or apartment houses. An apartment house is not a number of private dwellings, built one upon another, but a collection of dwellings objectionable to the restriction, which called for a single dwelling: *Skillman v. Smathehurst,* 40 Atl. 855, 856, 57 N. J. Equity 1, where the restriction was against a building 'other than for the use or purpose of a private dwelling.' The restriction is in the singular, not in the plural. An apartment house is not strictly a private dwelling; it is a place for housing a number of people grouped in families assigned to different sections in the same structure. Carried to its logical conclusion (as the size increases so does the population), it would embrace a building twenty stories high, or forty stories high. . . . The distinction between a private dwelling house or a private residence, on the one hand, and a house built or occupied as a residence for two or more families, is quite obvious. In the one case it is single, private and personal; in the other it is a sort of tenement affair."

The word "private" which this court considered so significant in the case just cited is of no greater force in connoting the idea of one-ness of family to a lot than is the idea of "cottage residence." An apartment house for four or five families, as planned by the defendants, is as irreconcilable with the restriction of buildings to "cottage residences" as this court adjudged it to be with the restriction of buildings "to private dwelling houses." The peace and privacy of life in a cottage has inspired many lyrical lines of poetry, but no poet's muse has yet been stirred to rhythmic verse by life in an apartment house.

The decree is affirmed at appellants' cost.