Gerstell et ux., Appellants, *v.* Knight et al.

Argued April 20, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*David B. Skillman,* for appellants.

*T. McKeen Chidsey* of *Chidsey, Maxwell & Fackenthal,* and *Leighton R. Scott,* of *Hogan & Scott,* for appellees.

OPINION BY MR. JUSTICE LINN, May 11, 1942:

This appeal is from a decree dismissing a bill filed to restrain defendants from altering into residences for two families, a house built by defendant Knight and formerly occupied as a residence for himself and family.

There is no dispute of fact except as to the meaning of words. In 1924, Mary A. Keenan owned the land, in

the city of Easton, now owned and occupied by the plaintiffs, and which then had constructed on it a three-story stone building occupied as her residence; she also owned the adjoining vacant lot, now owned by the defendants. This lot she conveyed by deed containing the following covenant: "It is hereby understood and agreed between the parties hereto that one residence only shall be built on the above described tract of land and said residence shall not be nearer to Shawnee Avenue than twenty (20) feet." The defendants subsequently acquired the land and constructed a residence which satisfied the restriction. In 1940 they proposed to alter the house into residences for two families. After a hearing on bill, answer, replication and testimony, the learned court dismissed the bill on the ground that such alteration was not a violation of the restriction.

The appeal depends on the meaning of the words "one residence only." Such restrictions are construed strictly in favor of the free use of property;[1] violations are declared only for plain disregard of the limitations imposed by express words and not for those implied;[2] they may be construed in the light of the circumstances in which the parties imposed them.[3]

We have no doubt about the meaning of the words in question; they mean exactly what they say, and in that sense should be given effect. It is unnecessary to consider near-synonyms nor to resort to rules of construction. The question simply is whether one family or a number of families should at one time occupy the land. Some of the apparent difficulties suggested in argument perhaps result from attempts first to ascertain meanings attributed in other cases to restrictive phrases having some general resemblance to that in the record, and then to substitute such definitions for the words in this deed.

---

[1] *Satterthwait v. Gibbs*, 288 Pa. 428, 135 A. 862.

[2] *St. Andrew's Lutheran Church's Appeal*, 67 Pa. 512.

[3] *Dewar v. Carson*, 259 Pa. 599, 103 A. 343; *Pocono Manor Association v. Allen*, 337 Pa. 442, 12 A.2d 32.

We first note that there was a contemporary construction of the covenant by the parties themselves that accords with the construction on which plaintiffs rely.[4] The defendant, Mr. Knight, built a house which a witness described as follows: "The house, as I said before, is a magnificent residence of Spanish architecture with a tile roof, extremely large, which housed Mr. Knight and his numerous children." It was "one residence only" and was built, as the restriction also required, not "nearer to Shawnee Avenue than twenty (20) feet."

The important word is residence; "to reside" is the infinitive; the phrase "one residence only" is an express restriction on the use of the land and there is no suggestion of anything unlawful in so restricting its use. The limiting words "one" and "only" must also be given their necessary effect. "Residence," in its popular as well as its dictionary sense, means a place of abode; it is where one lives, either alone, or with one's family; the family is the generally recognized unit.[5] By using the word "residence" and limiting its scope by the words "one" and "only" the parties agreed that during the existence of the covenant one place of abode only should be built for occupation by one person alone or with his family. If they had not intended so to limit the use of the land they would have used less restrictive words such as those considered in cases referred to in the argument. If, for example, they had restricted the use of the land to one dwelling house, or to one building, an apartment house would have been within this agreement.[6] Obviously, they did not intend that an apartment house should be a use agreed to.

---

[4] There is evidence that the house was originally planned to make it possible to transform it into two residences, but there is no evidence that the plaintiffs knew anything about that.

[5] Compare *Pocono Manor Association v. Allen*, 337 Pa. 442, 448, 12 A.2d 32.

[6] Compare *Johnson v. Jones*, 244 Pa. 386, 90 A. 649; *Hamnett v. Born*, 247 Pa. 418, 93 A. 505; *Rohrer v. Trafford Real Estate Co.*, 259 Pa. 297, 102 A. 1050; *Peirce v. Kelner*, 304 Pa. 509, 515, 156 A. 61.

The contrast may be illustrated by *Charlotte Consol. Const. Co. v. Cobb,* 195 N. C. 690, 143 S. E. 522, in which the restriction[7] prohibited the erection of "more than one residence or dwelling house on said lot." [8] The court referred to the fact that an apartment house was a dwelling house but said: "Residence is a more restricted term than dwelling house, and it would seem to be a refinement of construction to say that the two words, as here employed, were used synonymously, *idem re et sensu.* Rather it would appear that the second, which has the broader signification was intended as an enlargement over the first." It was accordingly held that the use of the word "dwelling house" permitted the construction of an apartment house. In our restriction the parties did not use the word "dwelling house"; on the contrary, by using the words "one residence only," they excluded an apartment house.

In *Taylor v. Lambert,* 279 Pa. 514, 124 A. 169, the restriction was to "a private dwelling house," and in *Fox v. Sumerson,* 338 Pa. 545, 13 A. 2d 1, it was to "a private dwelling house for the use of a single family"; in both cases alteration into residences for two families was enjoined.

The only case called to our attention in which this court dealt with the word "residence" [9] was *Pocono Manor Association v. Allen,* 337 Pa. 442, 12 A. 2d 32; the

---

[7] "The lot of land hereby conveyed shall be used for residential purposes only, and not otherwise, and shall be owned, occupied, and used only by members of the white race (domestic servants in the employ of said occupants excepted), and there shall not at any time be more than one residence or dwelling house on said lot (servants' house excepted)."

[8] The same court held in *Bailey v. Jackson-Campbell Co.,* 191 N. C. 61, 131 S. E. 567, in construing a restriction against "more than one residence" that an apartment house was not "one residence."

[9] In *Mayes v. Hale,* 82 Fla. 35, 89 So. 364, the restriction was to "one residence" and it was held that an apartment house was excluded. In *Ainsworth v. Elder* 40 Ariz. 71, 9 P.2d 1007, the restriction was to "only one residence" which the court held meant a residence for one family.

restriction was quoted in full at p. 444. We said: "The dominant idea in the phrasing is that of 'cottage residences,' and it is further stipulated that only *'one* cottage or dwelling house' shall be upon a single lot. Oneness of family in habitation is encouraged; plurality of families in habitations is interdicted." [p. 446] The defendant was restrained from turning a cottage into residences for several families.

While these cases, and others that might be cited, illustrate the application of the rules stated above, they leave the court still confronted with the duty of defining the restriction in use to "one residence only." We think this clearly means that only one person or his family shall reside on the land. If defendants may reconstruct the residence into two residences, the same principles of interpretation which would allow that change would of necessity allow them to make as many residences as a building on the whole lot 20 feet back of Shawnee Avenue would accommodate under one roof, which would constitute an apartment house, and would be an entirely unwarranted construction of the agreement.

Decree reversed; bill reinstated, record remitted for the purpose of granting the injunction prayed for, costs to be paid by defendants.


DISSENTING OPINION BY MR. JUSTICE MAXEY:

I dissent from the majority opinion in this case. The building restriction which gave rise to this litigation is clearly ambiguous. The stipulation that "one residence only shall be built" on the tract of land can be interpreted as meaning a residence for *one family* and it can also be just as reasonably interpreted as meaning *one building* used for residential purposes by one or more families. The *unity* stipulated for can as well mean *unity* of structure as *unity* of family. Webster's New International Dictionary defines "residence" as "the house where one's home is; a dwelling house". Dwelling house is defined in the same dictionary as "a house, or some-

times part of a house, occupied as a residence, in distinction from a store, office or other building."

The grantor responsible for the above restriction may have desired to have on this lot, 300 feet wide and 202 to 217 feet deep, (and neighboring lots) only *one structure* so that there would be large expanses of lawns between the homes. If two or more residences were built on each lot, the area would have a more congested appearance. (It is true that under the language of the restriction one structure could cover the entire lot so long as it was not built "nearer to Shawnee Avenue than 20 feet", but it is a reasonable inference that neither party had in mind that any such sprawling "residence" would be built.) It may also well be that the grantor intended to restrict the building on this lot to a residence for only one family. If that was his purpose he could easily have said so by hyphening the word "family" after "one". It is his own fault that he used ambiguous language and it is well settled that where a provision in a deed admits of two constructions, it will be construed most strongly against the grantor or most favorably to the grantee: *Collison v. Philadelphia Co.,* 233 Pa. 350, 82 A. 474. "Since one who speaks or writes, can by exactness of expression more easily prevent mistakes in meaning, than one with whom he is dealing, doubts arising from ambiguity of language are resolved in favor of the latter; . . .": Williston on Contracts, Revised Ed., Vol. 3, sec. 621, p. 1788. In *Klaer v. Ridgway,* 86 Pa. 529, 534, Justice PAXSON, speaking for this court, said: "It is a familiar rule that a deed or grant must be construed most strongly against the grantor. This applies with especial force to a reservation or restriction in a deed whereby there is a withholding of something from the grant."

There are also considerations of public policy in interpreting an ambiguous provision like this one. In such a situation that interpretation is to be preferred which best serves the public interest. It is a matter of common knowledge that on account of constantly increasing taxes and other adverse economic conditions owners of

city dwelling houses originally built for one family have found it necessary to convert their houses into "duplexes". Such multiple[1] dwelling houses in cities have generally not proved to be out of keeping with the "residential character" of the neighborhood. The court below in its opinion pointed out that there are at least sixty duplex residences in the district in which defendants' lot is restricted and "many of these duplex residences are very handsome".

The conversion of residences for one family into residences for two families have often enabled the owners to keep them in a good state of repair and have preserved such properties as taxable assets of municipalities. In the opinion of the court below appears the following statement: "Prior to the commencement of the work to effect the present conversion the defendants' residence was unoccupied and had been subjected to vandalism, thirty or forty of the windows having been found broken . . ."

Since the building restriction before us admits with equal facility of *two* interpretations I would give it that one which best serves the public interest.[2] There is in this country today a widely recognized shortage of suitable homes for people of moderate incomes, and a well maintained and fully occupied "duplex" is both socially and economically preferable in a community to a large vacant house suitable for only one family and falling into decay because there is no single family which can afford to occupy it.

The original plans for this residence provided for its conversion at any time into a "duplex". To accomplish this conversion all that was needed were a few interior

---

[1] It is seldom that such houses have been converted into apartments for *more than two* families.

[2] "Which [of the forces of judicial process] shall dominate in any case, must depend largely upon the comparative importance or value of the social interests that will be thereby promoted or impaired": Cardozo's "The Nature of the Judicial Process", p. 112.

structural changes and the addition of a door in the front and another at the rear of the building. This modified structure would accommodate no more people than it did formerly, for the plans for this "duplex" required that certain first floor rooms originally used as bed-rooms would in the "duplex" be used as dining room or as a kitchen.

The court below is obviously well acquainted with the locale of this structure and I would accept its judgment and affirm its decree.

Mr. Justice PARKER joins in this dissent.


DISSENTING OPINION BY MR. JUSTICE STERN:

It seems to me clear that the restriction "one residence only shall be built on the above described tract of land and said residence shall not be nearer to Shawnee Avenue than twenty (20) feet" is a restriction on the *number of houses* to be built on the tract, and not on the *occupancy* of the house when built other than that it be for residential purposes. The word "residence" in the "phrase "one residence only shall be built" refers obviously to the *building* or *structure,* as is shown further by the provision that "said residence shall not be nearer to Shawnee Avenue than twenty (20) feet." That "one residence only shall be built" means that two or more residences—houses—dwellings—shall not be built. Even if the wording of the restriction be deemed ambiguous, the rule—which the majority opinion admits, but to which, it seems to me, it gives merely lip service —is that all limitations on the free use of property are to be construed strictly. I therefore dissent, and would affirm the decree.