Pehlert et ux. *v.* Neff et ux., Appellants.

Argued December 9, 1942. Before KELLER, P. J., BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ. (STADT-FELD, J., absent).

*Philip Richman,* of *Richman & Richman,* for appellants.

*George O. Philips,* of *McDevitt, Philips & Watters,* for appellees.

OPINION BY HIRT, J., April 13, 1943:

This action in equity was brought to restrain the violation of a covenant running with the land. Defendants own two adjoining lots in Castor Cottman Gardens Annex in Philadelphia, which together have a frontage of 50 feet on Longshore Avenue. Plaintiffs and intervenors own land in the immediate neighborhood and all of the lots in this section of the subdivision, including those owned by defendants, are subject to building restrictions of which the following are material to this appeal: "That nothing other than *private residences* and private garages shall be erected on any of the lots. Not more than *one private residence* and private garage to each twenty-five feet thereof; ......" (Italics added.) No less than two adjoining lots were sold to any one purchaser.

The construction of the house on defendants' lots was begun in the Spring of 1941. Outwardly it had the appearance of a single family dwelling. When nearing

completion it became certain that it was a *three* family apartment house. The east half of the building, accessible through a side door, contained two separate apartments—one on the first and the other on the second floor; the west half was a single two story apartment now occupied by defendants. The final order in this case, from which defendants have appealed, directs them "to so alter and reconstruct the internal construction of the eastern half of their building situate on two lots of twenty-five feet each ...... so that it shall conform to the restriction and contains only one private residence on the said lot of twenty-five feet; it is further ordered and decreed that the defendants shall not use said eastern portion of their said building for more than one residence."

Under a strict construction of the building restriction (*Klaer v. Ridgway*, 86 Pa. 529) and without extending its terms (*Hoffman v. Parker*, 239 Pa. 398, 86 A. 864) defendants clearly have violated its provisions. "All doubts must be resolved against the restriction and in favor of a free and unrestricted use of the property ...... But the words 'private dwelling house' have a much more restricted meaning than that attributed to 'dwelling house' or 'one single dwelling' in the prior cases ...... Such restriction is violated by the use of a building ...... by three families living separate and apart (*Levy v. Schreyer*, 27 App. Div. 282, 50 N. Y. Supp. 584, 586) ; ...... by two or more families or one built for that purpose; *Koch v. Gorruflo*, 75 Atl. 767, 768; 77 N. J. Eq. 172, 140 Am. St. R. 552 ...... The distinction between a private dwelling house or *a private residence*, on the one hand, and a house built or occupied as a residence for two or more families, is quite obvious. In the one case it is single, private and personal; in the other it is a sort of tenement affair": *Taylor v. Lambert*, 279 Pa. 514, 124 A. 169. (Italics added.) *Pocono Manor Assn. v. Allen*, 337 Pa. 442, 12 A. 2d 32. The restriction in the present

case is reasonable and plaintiffs were limited by it to the erection of but one private residence on each of their two lots. The restriction which applied to the building also forbade the use of "one private residence" by more than one family. *Gerstell v. Knight,* 345 Pa. 83, 26 A. 2d 329. The chancellor, upon sufficient evidence, found that plaintiffs will suffer damage by the breach. Equity will restrain the violation of a restriction so long as it remains of substantial value to the owner of a dominant estate. *Hunter v. Wood,* 277 Pa. 150, 120 A. 781.

Plaintiffs are not barred by laches. On June 6, 1941, when they first had notice that defendants intended to build a three-family apartment, plaintiffs served defendants with written notice in part as follows: "We are informed that you intend to erect on the said land which you have acquired an apartment building. This is to notify you that we are informed and believe that the erection of such an apartment building is in violation of the building restrictions covering your and our land, and if you commence to erect such an apartment building, we will institute appropriate legal proceedings to restrain its erection." Plaintiffs later petitioned the Zoning Board of the City of Philadelphia to revoke defendants' building permit; their request was refused in August 1941 for want of jurisdiction to construe a building restriction imposed by deed in a local subdivision. Thereupon plaintiffs discussed the question with the building contractor and was informed by him that defendants had decided to change the structure to a two-family house. When the walls were up, the arrangement of the interior was closed to view and there was no duty on plaintiffs to inform themselves of defendants' continued violation by committing trespass. They relied upon the representation of the builder and nothing occurred to put them on notice of defendants' real intention until October 1941 when they observed the delivery of *three* complete sets of bathroom and other

plumbing fixtures. Thereafter, when convinced that defendants had violated the covenant, plaintiffs consulted counsel and filed their bill with reasonable promptness on November 7, 1941.

Where there is delay in bringing the action and a defendant in the meantime has incurred expense, a mandatory injunction should be issued with great caution. *Mackintyre v. Jones,* 9 Pa. Superior Ct. 543. The mere assertion of rights in the notice of June 6, in itself did not relieve plaintiffs from bringing legal action to establish them. *Harris v. Susquehanna Col. Co.,* 304 Pa. 550, 156 A. 159. But on the other hand plaintiffs are not barred from maintaining their bill merely because it was not filed until five months after the first notice that they intended to enforce their rights. The test is whether plaintiffs have been guilty of some omission which would warrant the presumption that they had abandoned the claim and had declined to assert it. "Laches is not to be imputed to a party from the mere lapse of time alone; it is an implied waiver, arising from knowledge of existing conditions, and acquiescence in them": *Hansell v. Downing,* 17 Pa. Superior Ct. 235; *Lavan v. Menaker,* 280 Pa. 591, 124 A. 743.

Plaintiffs were justified in the belief in August 1941 that defendants had changed their building plans to comply with the restrictions and the first visible warning that they were persisting in the violation came in October 1941. They never acquiesced in the completion of the building with knowledge of the continued violation and there was no waiver. The conclusion of the chancellor that plaintiffs are not chargeable with laches in failing to file their bill before November 7, 1941 is supported by findings and by the evidence. Findings of the chancellor based upon substantial evidence have the effect of a verdict of a jury. They cannot be reversed on appeal in the absence of clear error. *Manheim v. Bd. Co. Comm.,* 330 Pa. 92, 198 A. 650.

Decree affirmed at appellants' costs.