## Unethical Conduct by Osteopath

BARCO, Deputy Attorney General, July 29, 1943.—
We have your request for advice as to whether the
term "unethical conduct" as used in the provisions of
section 14 of the Act of March 19, 1909, P. L. 46, as
last amended by the Act of June 5, 1937, P. L. 1649,
63 PS §271, is a ground for the revocation of an osteo-
pathic license.

Your inquiry is occasioned by the fact that the State
Board of Osteopathic Examiners wishes to be ap-
prised of its authority to revoke the license of a prac-
ticing osteopath who pleaded guilty to charges of vio-
lating the narcotic laws.

It is not necessary for us to go into the merits of
the case in question since the discretion to be exercised
in this matter is imposed upon the State Board of
Osteopathic Examiners in that it may or may not sus-
pend or revoke the license depending upon whether, in
its judgment, the circumstances warrant such action.
It is sufficient for the purpose of this opinion to note
that the licensee was arrested and paid a fine for a
technical violation of the narcotic laws by sending
certain drugs through the United States mail.

The particular question presented by you is whether
or not "unethical conduct" must be associated with
misleading or fraudulent advertising in the practice
of osteopathy as determined by the State Board of

Osteopathic Examiners, or if it is of itself a ground for the revocation of a license separate from misleading or fraudulent advertising in the practice.

The pertinent part of section 14 of the above-cited act relating to this problem is as follows:

"The State Board of Osteopathic Examiners may refuse, revoke, or suspend the right to practice osteopathy in this State upon any or all of the following reasons, to wit: The conviction of a crime involving moral turpitude; habitual intemperance in the use of ardent spirits or stimulants, narcotics, or any other substance which impairs intellection and judgment, to such an extent as to incapacitate the performance of professional duties; the violation of the practice of the principles of the system of osteopathy as defined in this act; misrepresentation; *unethical conduct, or misleading or fraudulent advertising in the practice*, as determined by the board." (Italics supplied.)

It seems quite clear that "unethical conduct" is a separate ground for the revocation of an osteopathic license. However, in ascertaining the real meaning of these particular words, it is necessary in construing them to effectuate the intention of the General Assembly in passing such legislation as it relates to osteopathic physicians and surgeons, as a whole.

The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature: Wiesheier et al. v. Kessler, admr., 311 Pa. 380 (1933); Hammerle et al. v. Kessler, admr., 311 Pa. 386 (1933): Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 51, 46 PS §551. Where words are not explicit the intention of the legislature must be ascertained by considering among other things the object to be attained in the legislation: Orlosky v. Haskell, 304 Pa. 57 (1931). Such language must be read in a sense which harmonizes with the subject matter in its general purpose and object: Pocono Manor Association et al. v. Allen et al., 337 Pa. 442 (1940).

In reading the entire act it is easy to conclude that it was undoubtedly the purpose of the legislature in passing the osteopathic legislation to set up standards or requirements to be met by the practitioners in this particular field which would give such licensees a professional status in its most restricted sense, comparable to that of medical doctors and lawyers, whereby an individual must not only have special knowledge and learning in his particular field, but also must possess other qualities of good character and conduct befitting such status. In order to achieve this status of professional responsibility, separate and distinct from ordinary business practices and the restraints imposed only by general law, certain requirements were imposed upon such individuals restricting their normal freedom to carry on their profession, and restraining them over and above the ordinary business man in order to insure their continued integrity, good character and unselfish and honorable devotion to their chosen work. A man may be most skillful and learned in the field of osteopathic treatment and yet be denied the right to enter upon that practice due to some deficiency in character or conduct. A fortiori, it follows that a licensed practitioner may forfeit his right to continue to practice because of some prohibited misconduct. The purpose of such requirements, however, is not to defeat skillful practitioners, but to demand of them certain qualities of character and conduct which will be of mutual benefit to the practitioners and the general public.

While the various recognized professions have different standards of "unethical conduct", yet any "unethical conduct" in each situation must be interpreted in connection with the standard of conduct required of the particular profession. It is obvious that a licensed osteopath in the practice of his profession enjoys a position of special trust and confidence that enables him easily to violate the narcotic law, and at the same

time apprehension for violation is made more difficult because of the special privilege placed in him by the legislature. This being true the reason is apparent why the legislature has seen fit to place a high standard of conduct on a licensed osteopath by providing that "unethical conduct" may be a reason for refusing, suspending, or revoking his license. Hence, one who is in such a high position of trust and confidence and takes advantage of it to violate the narcotic law may be determined to be guilty of "unethical conduct" in the practice of osteopathy by the Osteopathic Examining Board.

The legislature must have been fully cognizant of this, and, therefore, its purpose in including "unethical conduct" in section 14, supra, becomes obvious. It is clear that "unethical conduct", if limited solely to misleading or fraudulent advertising, would greatly restrict the legislative purpose intended by this act, and most certainly it would result in making the construction not only extremely forced, but would achieve a result not compatible with an intention expressed in this section and by the entire act.

The clear meaning of this phrase is that "unethical conduct" is of itself a category separate and distinct from "misleading or fraudulent advertising in the practice as determined by the board".

We are of the opinion, therefore, and you are accordingly advised, that "unethical conduct" as used in section 14 of the Act of March 19, 1909, P. L. 46, as last amended by the Act of June 5, 1937, P. L. 1649, 63 PS §271, is of itself a separate ground for the suspension or revocation of a license by the State Board of Osteopathic Examiners in its discretion and it does not necessarily have to be connected with misleading or fraudulent advertising in the practice.