## Crayder et al. v. Seidman et al.

*Robert H. Arronson*, for plaintiffs.

*Herbert Somerson*, for defendants.

*Abraham L. Freedman*, city solicitor, and *James L. Stern*, assistant city solicitor, for City of Philadelphia.

ALESSANDRONI, J., February 19, 1953.—Plaintiffs' bill in equity seeks an injunction against some of the defendants, restraining them from constructing and dedicating a street to the City of Philadelphia in violation of a restrictive covenant, and a declaration that an ordinance of defendant city is illegal and void. The several defendants filed preliminary objections to the bill, one of which is that it fails to state a cause of action. At the hearing of the rule for a preliminary injunction the parties agreed to stipulate the facts and in effect presented a case stated for final determination on questions of law.

The controversy arises out of the interpretation of a restrictive covenant binding part of defendants' land, over which defendants Crown, Lowenthal and the E. R. Crown Construction Company (hereinafter Crown) propose to construct a street and dedicate the same to the city. The city was included as a defendant because it accepted the dedication by ordinance. Plaintiffs are adjacent and surrounding property owners in what might be termed an island residential community.

From the stipulated facts and the evidence introduced at the hearing the court makes the following

### Findings of Fact

1. Plaintiffs own property located on both sides of certain streets which form a rough oval; the streets involved are Brentwood Road, Woodbine Avenue and Seventy-second Street; entrance to this oval is made from Seventy-first Street from the north, and Brentwood Road from Seventy-second Street to the west.

2. When the present bill was filed defendants Seidman owned lot A with a 42-foot frontage on Brentwood Road; these defendants also owned lot B which adjoined lot A on the east; prior thereto, these defendants had conveyed lot C, which adjoined lot B and had an entrance to Seventy-first Street north of the oval, and to the west of the disputed land.

3. In December 1951 the Seidmans entered into an agreement of sale to convey lots B and A to Crown; this conveyance was contingent on the purchaser (Crown) being legally able to build a driveway or street across lot A to lot B from Brentwood Road; this contingency was to be in effect for 45 days.

4. At all of the above times and in fact from on or about June 15, 1950, lot A and 32 other lots became subject to the following restriction, to wit:

"Under and Subject, . . . that at no time . . . shall grantee, his heirs or assigns . . . erect or cause or permit to be erected . . . any building or structure except one private, one-family dwelling house . . . and except for such a separate, detached, single-family dwelling house to be used for private residential purposes no dwelling house or any other structure shall be erected on any one of the said lots . . .".

Lot B was not then nor is it now subject to this restriction, or any other restriction.

5. On June 17, 1952, settlement was made for the tract composed of lots A and B between the Seidmans and Crown; the effect of the condition in the agreement of sale had expired.

6. After an agreement of sale, but prior to settlement, defendant Crown offered to dedicate a street across lot A to the City of Philadelphia; the city by ordinance accepted the dedication; some of the plaintiffs appeared at a public hearing against the ordinance before its passage by city council; the ordinance was signed by the Mayor of Philadelphia on June 4, 1952.

7. Crown proposes to erect five houses on lot B, entrance to which will be gained via the street dedicated to defendant city, across lot A to Brentwood Road.

8. The initial grading for a 30-foot wide strip of lot A was undertaken to lay out a street by Crown.

9. As a result of this grading there have been created embankments on both sides of the proposed

street. The embankments form the boundaries of the land owned, on both the east and the west sides of the above street, by plaintiff Bell.

10. The home of plaintiff Bell on the lot to the east of lot A is six feet, three inches, from the boundary of Bell's lot and lot A.

11. Plaintiffs relied on the descriptions of the properties and the pictures and illustrations presented in the brochures advertising the development.

### Discussion

Despite the fact that preliminary objections have been filed and have not as yet been disposed of the case will be treated as on final hearing. There is no dispute as to the facts. The fundamental questions raised by the preliminary objections, chief of which is whether plaintiffs state a cause of action, are and will be considered on the merits, since the parties have stipulated all of the facts.

The initial question is whether or not a "street" as a "street" is barred on lot A by the restrictive covenant. The usual rules of construction of restrictive covenants must necessarily apply. The language used in the covenant plus the intent of the parties is, of course, the touchstone of construction.

The intent here expressed was crystal clear. The parties intended to create a private, isolated, residential community of a very excellent type. The intent was manifested by development of the tract in a manner calculated to eliminate all through traffic of any description whatsoever. The brochures introduced by plaintiffs adequately illustrate the purpose of laying out the community in the fashion in which the tract was developed.

The issue then is does the language of the restriction effectuate this purpose. If it fails to expressly manifest the intent, then, of course, regardless of what was

intended, the language controls. The critical language of the restriction is as follows:

"And except for such a separate detached, single-family dwelling house *to be used for private residential purposes no dwelling house or any other structure* shall be erected on any one of the said lots". (Italics supplied).

The rule of construction of ejusdem generis manifestly does not apply to this covenant; that rule is applicable only when the word or language construed is a catch-all which refers to a series of similar words which have gone before: Burns v. Coyne et ux., 294 Pa. 512.

The rule of construction that all doubts must be resolved against the restriction and in favor of the free use of property is definitely applicable: Crofton v. St. Clement's Church, 208 Pa. 209. However, building and use restrictions are of a definite social value and, within reasonable limits, should be enforced: Pocono Manor Association et al. v. Allen et al., 337 Pa. 442. In the above case, the court states some criteria for determining whether or not a restriction has social value: the nature of the community; the surroundings of the parties at the time the covenant was made, and the purpose of the covenant. All of these criteria have been examined in this case and are within the limits of reasonableness as far as the intent of the parties is concerned. The attempt to establish a private residential community as a safe place to raise one's family has great social value.

We turn now to consider the scope of the restriction. Under its clear and unmistakable language the lots' uses are limited to residential purposes; for that purpose a separate, detached single-family dwelling might be erected on any one lot. That is the only purpose for which this land could be used; the additional prohibition against any other structure served to accentuate

the intent. Anything which was not a single-family dwelling house, separate and detached and which was to be used for residential purposes could not be built on any of these lots. Under this construction it is obvious that a street does not meet the requirements of a single family detached dwelling house for residential use.

Additionally, is a street a structure? Generically, "structure" is a very broad term; considerably more encompassing than "building". Webster's New International Dictionary defines a structure as: "Something constructed or built; as a building, a dam, especially a building of some size, an edifice." Analytically, there would appear to be but one fundamental difference between a building and a street. That difference is the plane in which it is constructed. A building is constructed in a vertical plane, albeit it has some elements of the horizontal as well; the converse is true of a street, its principal characteristic is in the horizontal plane.

Whether one is constructing a street or a building, fundamentally, the operation is identical. Men, machines and material must be assembled on a prepared site; energy of both men and machines must be expended so as to combine the materials that an end product, a constructed product, is achieved. The only clear distinction is the plane in which the project is constructed. Clearly, a street is not a building (Mairs et al. v. Stevens et al., 51 N. Y. S. 2d 286, 268 App. Div. 922 (1944)), but it does not follow that because a street is not a building, it also is not a structure.

"Structure" as used in this covenant is not to be limited to houses, under the rule of ejusdem generis; it was intended to bar any structure that was not a single-family dwelling house to be used for residential purposes. No valid basis has been presented for the conclusion that "structure" can never include within

its definition, "street". The only possible basis is that the free use of property would bar such a restriction. But, as has already been indicated, reasonable restrictions will be enforced where there is a definite social value : Pocono Manor Association et al. v. Allen et al., supra.

Plaintiffs have standing to enforce the restriction since the lots under the restriction came from a common grantor, and were laid out according to a plan: Blackburn v. Speranzo, 15 West. 41. There can be no doubt whatsoever that the right is enforcible against defendant Crown and the Seidmans.

Does the fact that Crown has attempted to dedicate a 40-foot strip across lot A to defendant city prevent plaintiffs from enforcing their right? This raises a most interesting question which was propounded, but left unanswered in Kessler et ux. v. Lower Merion Township School District, 346 Pa. 305, 309.

"Again, if such a restriction *was* [italics the Supreme Court's] intended, would it run afoul of public policy by compelling the governmental agency acquiring the land by purchase or eminent domain, in addition to paying the value of the property itself, to compensate another land owner for the violation of an unenforcible restriction limiting the property to private uses?" (In the above case the restriction was held to be unenforcible because of vagueness and uncertainty). The question admits of the inference that they would have to pay adjoining owners if the restrictions were enforcible.

The instant case is distinguishable insofar as the question is relevant because the restriction is enforcible. The fact that the city could have taken the property by eminent domain does not force a different result when a gift is made to the city, from that which results if the gift had been made to an individual. The position of the city is indistinguishable from that of

any donee, it takes the gift cum onere. Thus, if the land were encumbered by a mortgage, no one would argue that by deed of gift to the city, the mortgage would be discharged. If the right of plaintiffs is enforcible at all, it is enforcible against the world, subject only to the paramount right of the public to take after compensation for a public use. The act or motivation which is vitally different and distinct and which differentiates a gift by dedication to the city and a taking by eminent domain is that of initiation, i.e., in eminent domain proceedings the initiator is the public body.

A deed of dedication to the city is intended to inure to the advantage of the donor, or, it is conceivably a philanthropy of the donor; eminent domain proceedings are instituted by the public agency because of the sovereign power of the State, and are further instituted in and for the public interest. Under the facts of this case, the donor could hardly be termed a philanthropist. No one would or could deny the power of the city to open this street; its power and authority to do so is not questioned; its present position under these facts is. There is no reasonable basis in logic or equity for holding that because the donee is a city and not an individual, the city's position is a whit better than that of an individual donee.

Therefore, since a donee takes only what the donor can give, if the donor lacks power to give anything, the donee receives nothing. Nor can any act of the donee alter the conclusion as far as third parties are concerned. The ordinance of the city accepting the deed of dedication accepted nothing, there being nothing to accept. It is not necessary to declare the ordinance unconstitutional or illegal, it is nugatory because it accepted a gift beyond the power of the donor to make.

A case similar on its facts is Friesen et ux. v. City of Glendale et al., 281 Pac. 93. In that case an attempt

to dedicate a right of way for a street to the City of Glendale was enjoined. The tract was restricted for residential purposes only. This case was reversed in 209 Cal. 524, 288 Pac. 1080. The Supreme Court of California there held that while the restriction was enforcible inter partes, it was not enforcible against a public agency. The status of the land was the same as though it had been taken by eminent domain. The adjacent property owners were not entitled to compensation.

The same result was achieved in United States v. Certain Lands in Town of Jamestown, R. I., 112 Fed. 622, where adjacent land owners attempted to obtain compensation for the loss of property that occurred on the taking of land for National defense. The court held that such a restriction on the right of eminent domain was unwarranted, and that the adjacent owners lacked any property right that was compensable.

There would appear to be an inconsistency in the position that the right of enforcing the restriction exists inter partes, but does not exist against the public body. The above decisions make the restriction a mere shell. In the latter case above cited, the proceedings were in eminent domain initially and hence differs completely from the instant case. A restrictive covenant cannot be held to restrict the power of eminent domain but, where there is an act of an individual in an attempt to evade the restriction, and because a public body is given a gift, does that force the conclusion that ipso facto the right to enforce the restriction evaporates. Given the facts of (1) a restriction; (2) land bound by this restriction is deeded to the city by gift; (3) the city accepts the gift, are the adjacent owners powerless to prevent this evasion? Are they to be solaced by the fact that the restriction is enforcible

against the individual. Such a holding would make a mockery of the enforcibility of restrictive covenants.

If the right is a right, then it must be enforcible against all or none. It is true that the damage to one's property by the public taking of another's land by eminent domain bound by the same restriction, might be nominal or even de minimus, yet it must be conceded that there is damage. How much damage must be ascertained in the usual manner.

The important consideration as we view it is not the rights of the parties in eminent domain proceedings, but their rights under these facts and circumstances. The bill is directed at the individuals who have tried to evade a valid restriction by the magnanimous gesture of a gift to the public. If the gift is sustained, then what becomes of the enforcible rights of the parties inter se? The city under these circumstances must be held to take the gift cum onere, bound by the restriction.

Defendant Crown seeks to invoke the "clean hands doctrine" as far as plaintiff Bell is concerned. Bell's house on the lot adjoining lot A on the east will be and is only six feet, three inches, from the boundary of lot A. This apparently is in violation of the Philadelphia Zoning Ordinance of 1933, as amended, sec. 7(19) (a). There was some reference to the fact that different surveys have disclosed this apparent violation. However, as has been frequently indicated, the act alleged to bar recovery under this doctrine must be one that goes to the heart of the transaction and in some fashion, has affected the equitable rights of the adverse party. Crown has in no way suffered because of the act of Bell and Crown's allegation of "dirty hands" comes with poor grace, especially so since despite a letter to plaintiffs' counsel that nothing would be done on lot A pending this decision, work proceeded on the grading of lot A to lay out a street.

One to whom land has been conveyed under an enforcible restriction, will not be permitted to avoid the full force and effect of the restriction by evasion. Tucker v. Howe, 370 Pa. 546. In that case defendant sought to avoid the effect of a restriction by subdividing a lot. Here, defendants have attempted to circumvent the clear language and intent of the parties by a dedication to the city. Such attempt will be stricken notwithstanding the fact that the city has power to take under eminent domain.

### Conclusions of Law

1. The court has jurisdiction of the subject matter and the parties.

2. Plaintiffs have established a cause of action against all defendants.

3. Defendant Crown's attempt to dedicate a street across lot A to the city is a violation of the restrictive covenant.

4. Crown's deed of dedication to the city was beyond the power of Crown to convey, and this deed conveyed nothing.

5. The ordinance of defendant city which accepted the deed is of no effect, because Crown had nothing to give which could be accepted.

6. The Seidmans are proper parties because they were the registered owners when the bill was filed and indexed lis pendens.

7. Plaintiffs have established their right to a decree.

8. Let the following decree nisi be entered.

### Decree Nisi

And now, to wit, February 19, 1953, it is ordered, adjudged and decreed that:

1. Defendants Seidman and Crown are restrained from laying out, grading and constructing a street across lot A;

2. Defendants Seidman and Crown are ordered to restore the lot A to its original condition;

3. Defendants Crown and the City of Philadelphia are ordered to cancel the deed of dedication;

4. The City of Philadelphia is restrained from placing Woodbine Terrace on the city plan in accordance with the ordinance of June 4, 1952.

5. Costs are to be paid by defendants Eugene R. Crown, Harold J. Lowenthal and E. R. Crown Construction Co.

The prothonotary is directed to give notice to the parties of the filing of this decree nisi and that unless exceptions are filed thereto within 20 days he shall enter this decree nisi as the final decree.