## Snyder v. Factory Automated System Techniques, Inc.

346

*Roger V. Wiest,* and *Wiest & Younkin,* for plaintiffs.
*Franklin L. Kury,* and *Kury & Kury,* for defendant.

KIVKO, P. J., October 22, 1970.—Plaintiffs, residents and owners of land in a development known as Pleasant Valley Village (Village), Turbot Township, Northumberland County, filed a complaint in equity to enjoin defendant from proceeding with the construction of 40 dwelling units on land it owns in a section of the village which formerly was part of Turbot Township but now is a part of the Borough of Milton. Plaintiff's complaint is based on an allegation that such construction would violate the following restrictive covenant: "That no building other than a residence shall be erected on said lot, except a garage for private, residential use."

A preliminary injunction was issued July 30, 1970. After hearing held on August 3rd, at which the parties stipulated they had presented all of the testimony they had to present on the issues involved, the preliminary injunction was continued to August 10th. The parties presented their arguments and submitted their briefs on August 6th. On August 8th, the court entered a decree nisi dissolving the injunction and dismissing the complaint. This opinion sets forth the reasons for said decree.

### STATEMENT OF FACTS

Henry Fonda died in 1896, devising various lands, including a 100-acre tract in Turbot Township, to his children for their lives, with the remainder to their

children. In 1920, on the petition of one of the life tenants, the Orphans' Court of Northumberland County appointed a trustee for all the lands of Henry Fonda, deceased, with power to sell the same subject to court approval.

By deed dated May 18, 1950, the trustee, with court approval, sold a parcel of land in Turbot Township to Warren C. Evans and Ella B. Evans, his wife. This consisted of lots numbered 8 and 9 in block 3 of a plan of lots as surveyed by John R. Mundy & Son. The deed conveyed the property in conformity with the court decree subject to certain restrictions, including the following: "(1) That no building other than a residence shall be erected on said lot, except a garage for private, residential use. (2) That neither said lot nor any building erected thereon shall be used for any commercial purpose. (3) That the minimum cost of any residence erected on the said lot shall be $10,-000.00 . . ."

On March 21, 1955, the court, pursuant to petition filed, authorized the trustee to convey a 20-acre tract (more accurately, 19.995 acres) in Turbot Township to the two remaindermen, Arthur F. Slocum and Charlotte S. Bryant, trading as Pleasant Valley Development Co. (development company). By a supplemental decree dated May 16, 1955, the court directed that the deed contain the following provisions: "SUBJECT, NEVERTHELESS, to all of the restrictions contained in the Deed from the (Trustee) to Warren C. Evans & Ella B. Evans, his wife, dated May 18, 1950 . . . , all of which restrictions are incorporated herein by reference thereto . . ."

The trustee conveyed the tract to the development company by a deed dated April 12, 1955, and recorded May 23, 1955. The deed described the tract by metes and bounds and, following the recital of title, included

the above-quoted provision on restrictions from the supplemental decree of May 16, 1955. The deed made no reference to any map, plot or plan.

Approximately two years later, on January 21, 1957, the development company recorded a plan of Pleasant Valley Village surveyed April 5, 1955, by Howard Fetterolf, showing most of the 20-acre tract subdivided into lots numbered from 1 to 54. The plan contains no building or use restrictions and makes no reference to any.

From 1955 to 1968 the Development Company sold and conveyed parcels of land in the Village to various parties, including plaintiffs, referring to the land conveyed by lot numbers. Each of the deeds contained the same set of restrictions, including the one that is in question in this proceeding. None of the deeds expressly state or refer to any restrictions on any land except the land described in and conveyed by the deed.

By deed dated June 27, 1968, the development company conveyed 5.3 acres in the village to the borough of Milton. This included, inter alia, land shown on the plan of the village as lots numbered 25 through 28 and lots numbered 47 through 54. The borough annexed this property to the Borough of Milton and by deed dated January 21, 1970, conveyed four acres of it, including the land shown on the plan as the eight numbered lots just mentioned, to the Milton Area Industrial Development Association, which by deed dated March 8, 1970, conveyed it to defendant.

Neither the deed conveying 5.3 acre tract nor the deed conveying the four-acre tract described the land conveyed by lot numbers. Nor did these deeds specifically or by reference incorporate any building or use restrictions.

Under date of June 11, 1970, defendant and the Housing Authority of Northumberland County

(housing authority), with the approval of the Secretary of Housing and Urban Development of the United States (HUD), entered into an agreement for a federally financed housing project. Under the terms of this agreement, defendant agreed to make certain improvements on this land, including the construction of "forty dwelling units" within 210 days from the date of the agreement, and upon completion of the improvements to sell the property to the housing authority for $641,595.

The project calls for the construction of 18 structures in cluster type arrangements. Each of five clusters will contain from three to five structures. Each of 14 structures will be divided into two single-family dwelling units so designed and plotted that each dwelling unit and the land on which it is built can be sold separately. Each of the remaining four structures will be divided into three single-family dwelling units consisting of one dwelling unit similar to those just described and two dwelling units designed in duplex style with separate entrances.

Neither the structures nor the clusters of structures bear any relationship to the numbered lots as they appear on the plan of the Village. Ten of the structures will be on that portion of the ground shown on the plan as lots 47 through 54. The rest will be off such ground or extend partially on it. The project also calls for the construction of a community building which will be entirely off such ground.

The buildings will be a modular type. Ninety percent of each living unit is manufactured by defendant's parent corporation, Modular Housing Systems, Inc., on an assembly line basis and transported to the building site where the units will be assembled and finished into completed structures.

It is the construction of these structures that plaintiffs seek to enjoin.

Each of plaintiffs (husband-wife plaintiffs are considered as one plaintiff) owns and lives in a single-family dwelling on a numbered lot. The original cost of each dwelling and the ground on which it is constructed varies from $10,800 to $16,000. The dwellings have been upgraded since the time of purchase and the estimate of the present market value of each varies from $18,000 to $30,000. The property of some of plaintiffs adjoins the project site. The property of some of the others is across the street from the site.

Plaintiffs contend that the proposed construction by defendant violates the restrictive covenant "that no building other than a residence shall be erected on said lot, except a garage for private, residential use." They further allege that the construction of multiple family type dwellings to house 40 families will cause them the following substantial harm: it will create traffic congestion; the project dwellings are incompatible in appearance with the dwellings in the rest of the Village, are intended for low income families, will deteriorate rapidly and will adversely affect the market values of the other properties in the Village.

Defendant, on the other hand, contends that the proposed construction does not violate the restrictive covenant. It contends further that the dwellings, whose exterior walls will be brick over wood, and whose settings will be landscaped, are constructed of materials and by methods that are superior to those used in conventional on-the-site construction, and conform to the project's planning and design criteria which call for material and equipment that will provide a life expectancy of at least 40 years and a design of such quality as to reflect a relationship to the architectural standards of the neighborhood and community. The cost of the project, if apportioned to the single-family dwelling units to be constructed, will amount to at least $15,500 for each such unit.

Defendant further contends that although the agreement wasn't signed until June 11, 1970, it was generally known two years earlier that the city acquired the site for a low income housing project, that on January 21, 1970, the city conveyed the tract, nearly all of it in the village, to the housing authority for this purpose, that the authority on the following day passed a resolution, consummated on March 9th to convey it to defendant for the purposes which plaintiffs now seek to enjoin, that the modular homes which defendant ordered manufactured specifically for this project for a price of $421,000 are 80 percent complete, that defendant expended on the project approximately $478,000 and that for these reasons, and particularly because this is "a public work," plaintiffs are barred by laches from invoking the equitable powers of the court to grant injunctive relief.

## DISCUSSION AND CONCLUSIONS OF LAW

Restrictions may arise (1) by express covenants, or (2) by implication (a) from the language of the deeds, or (b) from the conduct of the parties: Baederwood, Inc. v. Moyer, 370 Pa. 35, 40 (1952); Witt v. Steinwehr Development Corporation, 400 Pa. 609, 612 (1960).

Plaintiffs contend that defendant's land is subject to the restriction they rely on in this action by virtue of the express covenant in the deed to the development company for the 20-acre tract of which defendant's land is a part. Plaintiffs further contend that defendant's land is also subject to the restriction by implication arising out of the conduct of the parties, that is, the sale of lots to plaintiffs and others under uniform restrictions indicating a general scheme of restrictions to be applied to the entire village.

Defendant, on the other hand, contends preliminarily that the express covenant was intended not for the benefit of plaintiffs but for the benefit of the trustee-grantor to protect such other land as the trustee then owned and that, therefore, plaintiffs have no standing to seek the enforcement of such covenant. Defendant further contends that no restriction by implication exists for the reason that the evidence does not measure up to the required standard of clear and unequivocal proof that such a restriction was intended to bind defendant's land.

We do not deem it necessary to decide or discuss these issues. Assuming, arguendo, the validity of plaintiffs' contentions that the land is bound by the restriction for plaintiffs' benefit by express covenant and by implication, we, nevertheless, conclude that the type of structures proposed to be erected by defendant reveal no violation threatened to the restriction.

The questions presented in this proceeding are the scope and meaning attributable to the word "residence" and the phrase "no building other than a residence shall be erected on said lot."

In considering these questions, we must apply certain well-settled legal principles which were succinctly stated by Chief Justice Stern in Jones v. Park Lane For Convalescents, Inc., 384 Pa. 268, pages 271, 272 (1956):

"In order properly to consider and determine the question involved it is important at the outset to have in mind the applicable legal principles that have been enunciated, frequently reiterated, and consistently applied, through a long succession of cases decided by this court. However variously phrased, they are, in substance, that restrictions on the use of land are not favored by the law because they are an interfer-

ence with an owner's free and full enjoyment of his property; that nothing will be deemed a violation of a restriction that is not in plain disregard of its express words; that there are no implied rights arising from a restriction which the courts will recognize; that a restriction is not to be extended or enlarged by implication; that every restriction will be construed most strictly against the grantor and every doubt and ambiguity in its language resolved in favor of the owner." See, to the same effect, Parker v. Hough, 420 Pa. 7 (1966); Fatkovich v. Randell Homes, Inc., 403 Pa. 63 (1961).

We know of no Pennsylvania decision construing the word "residence" standing alone in a restrictive covenant. The courts, however, have construed covenants involving restrictions on places of abode under other names. Although we recognize that every word may have its own special connotation and that this may be affected by the context in which it is used, we turn to these cases to ascertain whether the manner in which the courts have applied the above-quoted legal principles will help resolve the questions before us.

In Kauffman v. Dishler, 380 Pa. 63 (1955), the question at issue was whether defendant would be permitted to erect two three-unit apartments on land bound by the following restriction: " 'That not more than one (1) house, same to be detached or semi-detached, and private garage shall be erected on each lot. . . .' " The court below entered a decree prohibiting such construction. The appellate court reversed. In an opinion collating many pertinent authorities, it concluded that the restriction did not prohibit the building of the apartments even though they would be occupied by more than one family, saying ". . . all the authorities are uniform to the effect that a restriction against the erection of a building other than

a 'house' or a 'dwelling house' is a restriction only in regard to the *type of construction* and not the subsequent *use,* and that if any restriction on *use* is intended it should be plainly expressed and not left to implication." (Italics supplied.)

The distinction between a "building restriction" and a "use restriction" is set out in Jones v. Park Lane for Convalescents, Inc., supra, at pages 272, 273, as follows:

"The restrictions in the former class are concerned with the physical aspect or external appearance of the buildings, those in the latter class with the purposes for which the buildings are used, the nature of their occupancy, and the operations conducted therein as affecting the health, welfare and comfort of the neighbors. A building restriction and a use restriction are wholly independent of one another, and, in view of the legal principles above stated, the one is not to be extended so as to include the other unless the intention so to do is expressly and plainly stated; to doubt is to deny enforcement."

In Ratkovich v. Randall Homes, Inc., supra, the question presented was whether a restrictive covenant in a deed which provided that " 'not more than one house exclusive of a private garage shall be erected on each lot' " prohibited in any manner the erection of a duplex and/or four unit family house. The court held that it did not, saying that the "restrictive covenant was directed not against the *use* and *occupancy* but the *type* of building which might be erected and that [the plaintiff] was not entitled to have the erection of the proposed structures restrained solely on the ground that it was a 'building for occupancy by more than one family' . . ."

The court further said: "The word 'house' is susceptible of various meanings . . . the word 'house'

in restrictive covenants has often been construed not to prohibit the erection of a duplex and/or an apartment house . . ." An examination of the terms of the present restriction and a consideration of the type of structures proposed to be erected reveal no violation threatened to the restriction. The restriction is silent as to the size, appearance, design and character of construction which may be utilized on these lots, and there is nothing in the provisions of the restrictions which interdicts the erection of these proposed structures.

"Had the creator of the instant restriction desired to restrict the use of these lots to *single-family dwellings* or prohibit the erection thereon of two or four units for multiple-family dwelling, it would have been easy to so word the restriction. Courts should not attempt to remedy the omissions of those creating restrictive covenants and extend, by implication, a restraint on the use of land by writing into a restriction that which is not therein clearly expressed." (Italics supplied.)

Although no Pennsylvania decision construing the unqualified word "residence" in a building or use restriction has come to our attention, our Supreme Court in two decisions has construed the word when coupled with qualifications which the court held limited its normal scope and meaning.

In Pocono Manor Association v. Allen, 337 Pa. 442 (1940), the restriction provided that the lot "shall be used only for the erection and maintenance thereon of buildings for cottage residences and dwelling purposes." The lots were in the Pocono Mountain resort area. In restraining defendants from converting a cottage into an apartment for four or five families, the court said: "The dominant idea in the phrasing is that of '*cottage* residences' . . . There is no doubt

about the meaning of the word 'cottage' . . . An apartment house for four or five families, as planned by the defendants, is . . . irreconcilable with the restriction of buildings to *cottage* residences' . . . (Italics supplied.)

In Gerstell v. Knight, 345 Pa. 83 (1942), the restrictive covenant provided that "one residence only shall be built on the above described tract of land." In holding that the restriction would be violated if defendants altered a single-family dwelling into two-family dwelling units, the court said: "The appeal depends on the meaning of the words *one* residence *only*' . . . By using the word 'residence' and limiting its scope by the words *one* and *only* the parties agreed that during the existence of the covenant one place of abode only should be built for occupation by one person alone or with his family, if they had not intended so to limit the use of the land they would have used less restrictive words . . ." See comment in Jones v. Park Lane for Convalescents, Inc., supra, at page 276. (Italics supplied.)

The emphasis placed by the court on the qualifying word "cottage" in the Pocono Manor Association case and on the qualifying words "one . . . only" in the Gerstell case indicates that it would not have limited the scope and meaning of the phrases "cottage residences" and "one residence only" as it did if the word "residence" appeared in the restrictive covenants without qualification.

This conclusion is further supported by the distinction drawn between the word "residence" and the phrase "private residence" in the opinion of the court in Taylor v. Lambert, 279 Pa. 514 (1924), although neither expression appeared in the restrictive covenant that was construed. The restriction provided "that there shall not be erected upon the above de-

scribed . . . lot of ground . . . a building or buildings designed for any other purpose than a private dwelling house, and that no such building erected thereon shall be occupied or used for any purpose other than a private dwelling house." The restriction was against both the erection and the use of any building for any purpose other than a private dwelling house. See Jones v. Park Lane for Convalescents, Inc., supra, at page 273. It was held that an apartment house would be a violation of the restriction. The court said, . . . the words 'private dwelling house' have a much more restricted meaning than that attributed to 'dwelling house' or 'one single-family dwelling' . . . the distinction between a *private dwelling house* or a private residence, on the one hand, and a *house* built or occupied as a *residence* for two or more families, is quite obvious." The court equated *"private* residence" with *"private* dwelling house" and "residence" with "dwelling house." (Italics supplied.)

"Dwelling house" and "residence" were also equated in the earlier case of Johnson v. Jones, 244 Pa. 386 (1914). The restriction was that "nothing but a church or a dwelling house . . . shall ever be erected upon any part of the said land; that none of the structures so erected shall ever be used . . . for any other purpose than a dwelling house . . . or a church." It was both a building and use restriction. It was, nevertheless, held that the restriction would not be violated by a series of buildings each four stories in height, each story to contain two separate apartments. The court said: "The governing word here is 'dwelling-house.' We find nothing to indicate that the word is used in any qualified or restricted sense. As defined by Webster, and this we take to be the sense in which it is ordinarily used and understood, *a dwelling-house* is a house occupied as a *residence,* in distinction

from a store, office or other building. Neither the character of the structure here proposed, nor the use to which it is to be put, suggests anything that would bring it within any of these distinctions." (Italics supplied.)

The restriction on which plaintiffs base their request for a restraining order in the matter before us is a building restriction. It reads: "That no building other than a residence shall be *erected* on said lot, except a garage for private, residential use." The character of this restriction is highlighted by the use restriction which immediately follows it and which reads: "That neither said lot nor any building erected thereon shall be *used* for any commercial purpose." (Italics supplied.)

The word "residence" is not qualified or restricted in any way.

In the light of the authorities cited above, we hold that the type of structures proposed to be erected by the defendant, containing two or three family dwelling units, is not a violation of the restriction.

We have one further question to consider: Does the restriction prohibit the erection of more than one structure on a lot?

Defendant contends in the first instance that there is a lack of uniformity in the meaning of the word "lot" as used in the deeds on which plaintiffs rely and that the resulting ambiguity renders plaintiffs' position untenable. We find it unnecessary to discuss the contention. Even if we assume that the word "lot" means a lot as laid out on the plan of Pleasant Valley Village, as plaintiffs contend, defendant's disregard of lot lines in the proposed construction of eighteen structures is not a violation of the restriction.

The restriction does not expressly prohibit the erection of more than one structure on a lot. It limits the

type of structure that may be erected but not the number. The word "a" as used in the phrase "a residence" does not necessarily mean a numerical limitation. It is a function word which has many uses. Webster's Dictionary (Webster's Third International Language Dictionary published in 1961) gives one of them as follows: "it is used as a function word before a mass noun to suggest that a *kind* or *type* is under consideration." (Italics supplied.)

We have already held on the basis of authorities cited that the word "residence" as used in this restriction indicates the type of structure that may be erected on defendant's land. The word "a" that precedes it is a function word, the absence of which would result in bad grammer. The conclusion that it does not mean "one" is further supported by the phraseology of the two restrictions which follow: "(2) That neither said lot nor *any* building erected thereon shall be used for any commercial purpose. (3) That the minimum cost of *any* residence on the said lot shall be $10,000.00 . . ." (Italics supplied.)

In any event, we are bound by the well-settled rule stated above that all limitations on the free use of property are to be construed strictly, that nothing will be deemed a violation of a restriction that is not in plain disregard of its express words, and that every doubt and ambiguity in the language of a restriction must be resolved against the restriction.

Plaintiffs would have us construe the restriction as if it read "That not more than *one single family* residence shall be erected on said lot." Since it does not read that way, we cannot, for reasons given above, so construe it.

In view of the conclusions reached, it becomes unnecessary to discuss the other questions raised by defendant.