Bennett *v.* Lane Homes, Inc., Appellant.

Argued January 11, 1952. Before DREW, C. J., STERN, STEARNE, BELL, CHIDSEY and MUSMANNO, JJ.

*William Ginsburg,* with him *Ginsburg & Weisberg,* for appellant.

*Norman R. Bradley,* with him *Benjamin Fertik,* for appellees.

OPINION BY MR. JUSTICE MUSMANNO, March 27, 1952:

The defendant in this case, Lane Homes, Inc., owns a plot of ground on which it proposes to build a three story 34-unit apartment house, whose overall dimensions would be 151 feet by 160 feet. The land upon which the apartment house would be built is part of a tract of land located in Philadelphia and originally owned by one Frank Mauran who in 1924 divided it into building lots each with a street frontage of 24 feet, imposing upon the tract the restriction that *"not more than 1 house, same to be detached or semi-detached and private garage to be used in connection therewith,* shall be erected on each lot with a frontage of at least 24' . . ."

The plaintiffs, who are owners of private dwellings, all erected on land subject to the same restriction, brought a bill in equity to enjoin the erection of the proposed apartment house as being in violation of the

admitted restrictive covenant. The defendant filed exceptions to the permanent injunction granted by the court below, the exceptions were dismissed and this appeal followed.

Reduced to its simplest terms, the only question before us is: Is an apartment house a house, in the sense intended by Frank Mauran in his deeds conveying the land which is the subject of controversy?

Counsel for the appellant Lane Homes, Inc., has filed a brief, persuasive in tone and studded with quotations from decisions which at first blush seem convincing. He argues that the words "private garage" used in the deed may not modify the preceding word "house," so as to limit construction to only private dwellings. Once an unlimited right is granted, subsequent limitations will not avail to reduce the scope of the unlimited right. And he quotes from *Peirce v. Kelner,* 304 Pa. 509, 515, 156 A. 61: "A careful review of the authorities, in this as well as other jurisdictions, relating to the use of the words 'dwelling house' leads us to conclude that a restriction of this nature does not exclude the erection of an apartment house but embraces this type of dwelling within its modern signification . . . The authorities are numerous that a covenant to erect only one building does not forbid the erection of an apartment house."

It was held also in that case that the words "private stable" did not limit the word "building" to a dwelling house: "Nor does the limitation 'private stable' aid the restriction so as to limit the building to a dwelling house because a stable is usually associated with the use of a dwelling."

Appellant also quotes from *Johnson v. Jones,* 244 Pa. 386, 90 A. 649, where the restriction there under consideration read: " 'That nothing but a church or dwelling house, together with the out-buildings neces-

sary for the convenience and comfort of the occupants thereof, shall ever be erected upon any part of the said land; that none of the structures so erected shall ever be used as a business place, manufactory or drinking saloon, or used for any other purpose than a dwelling house, or its necessary out-buildings or a church', etc."

The defendant there proposed to erect a series of buildings four stories in height for housekeeping apartments. A bill was filed to restrain the erection of the buildings. The Supreme Court held: "The question raised is a very narrow one; does such a structure, devoted to the use here described fall within the prohibition imposed? An affirmative answer to the question can be returned only in case it is made to appear that the improvement proposed is in plain disregard of the express words of the restriction; all doubts are to be resolved against the restriction and in favor of the free and unrestricted use of the property. Such is the rule laid down in St. Andrew's Lutheran Church's Appeal, 67 Pa. 512. The governing word here is 'dwelling house.' We find nothing to indicate that the word is used in any qualified or restricted sense. As defined by Webster, and this we take to be the sense in which it is ordinarily used and understood, a dwelling-house is a house occupied as a residence, in distinction from a store, office or other building. Neither the character of the structure here proposed, nor the use to which it is to be put, suggests anything that would bring it within any of these distinctions."

The decisions in these cases are, of course, authoritative but they do not cover the facts in the case before us. In the *Peirce v. Kelner*, case, the restriction forbade the erection of more than one *building*. The covenant in the case at bar forbids the construction of more than one *house*. The word "building" is far more expansive than the word "house."

In the *Johnson v. Jones,* case, the covenant permitted the erection of churches and dwelling houses so long as "none of the structures erected shall ever be used as a business place, manufactory or drinking saloon." It was obvious in that case that the grantor in no way limited the type of dwelling houses to be erected, but only the *use* to which they were to be put. But in our present case the grantor made it crystal clear that the only structure to be erected on each lot was a house intended for private, exclusive and personal occupancy.

Appellant contends that the word "house" includes "apartment house." It does so only in its most generic sense. Our Court in the very case advanced by appellant, Peirce v. Kelner, (supra.) said: "We have recently stated in many cases the rules relative to the interpretation of restrictions, and that a construction should not be adopted that would defeat the intention of the parties. Words should be taken *in their common rather than their technical meaning.*" (Emphasis supplied)

The common meaning of the word "house" is abode; abode for one or more persons. But the word "more" in this connection would not be unlimited. An abode for a greater number of persons would include a tenement, a hotel, a barracks, or even a penitentiary, none of which would in common parlance be called a house.

Scarcely anywhere in literature does the word "house," when referring to a habitation, mean more than a dwelling place for a comparatively small number of related people. Appellant seeks to use the word "house" generically and all-embracingly, but to say that house includes an apartment house is similar to saying that the word "boat" includes an ocean liner or a battleship.

Where "house" is used to indicate something other than a private dwelling or personal abode, it invari-

ably carries with it a descriptive adjective or prefix, such as in the designations: *car house, tool house, wheel house, fire house, workhouse, almshouse, apartment house.*

Webster's New International Dictionary, 2nd Edition, Unabridged (published 1950) defines "house'" as follows: "A structure intended or used for human habitation; esp., a human habitation which is fixed in place and is intended for the private occupation of a family or families." The distinctive feature of this definition is "private occupation." And it is legendary that residence in an apartment house where each dweller listens involuntarily to the conversations, radio programs, vocal solos and piano duets of his neighbors, separated from him only by thin partitions, can scarcely be regarded as an enjoyment of privacy.

A house, as Webster stresses, is something personal for a family, and when Frank Mauran used the word "house" in the conveyance, he unquestionably meant "home." Otherwise the phrase, "private garage to be used in connection therewith", would be meaningless.

The building structure contemplated by the defendant would have momentously more than a frontage of 24 feet, the minimum requirement prescribed in the deed. The projected building frontage would be equivalent to the frontage of 9 lots on one street and 6 lots on another. That Frank Mauran never intended to include large multiple dwellings within the scope of the building restriction is evidenced further by the fact that he indicated that the house to be built on each lot should cost at least $4,000. While this is the minimum required expenditure, it is obvious that this amount is so out of proportion to the cost of an apartment house as to dispel completely any idea of an apartment house, the cost for the construction of which can hardly ever be contemplated in a sum less than six figures.

In *Gerstell v. Knight,* 345 Pa. 83, 26 A. 2d 329, a building restriction declared that "one residence only shall be built on the above described tract." The owners attempted to alter a residence on the tract so that it could accommodate two families. The Supreme Court, speaking through Mr. Justice LINN, said: "We have no doubt about the meaning of the words in question; they mean exactly what they say, and in that sense should be given effect. It is unnecessary to consider near-synonyms nor to resort to rules of construction. The question simply is whether one family or a number of families should at one time occupy the land. Some of the apparent difficulties suggested in argument perhaps result from attempts first to ascertain meanings attributed in other cases to restrictive phrases having some general resemblance to that in the record, and then to substitute such definitions for the words in this deed."

The restriction in the case at bar says: "Not more than one house." The only way this restriction could be clearer would be for it to read: "Not more than one dwelling house," but under the argument used by appellant, "dwelling house" would also have included "apartment house." However, the limiting descriptive phrase which follows: "and private garage to be used in connection therewith" ends all doubt that Mauran intended this community to be built up of any type of structure other than single private dwellings.

It is also to be noted in this respect that the restriction specifically requires that the house to be erected on any lot involved must be "detached or semi-detached". In no conceivable manner may an apartment house, with its multiple dwellings, be regarded as a "detached or semi-detached house."

In *Pocono Manor Ass'n. v. Allen,* 337 Pa. 442, 12 A. 2d 32, the Court decided that the conversion of a pri-

vate dwelling into four or five apartments violated the restriction in that case which declared "not more than one cottage or dwelling house shall be erected upon any lot hereby conveyed." There the Court said: "An apartment house is not a number of private dwellings, built one upon another, but a collection of dwellings objectionable to the restriction, which called for a single dwelling: Skillman v. Smathehurst, 40 Atl. 855, 856, 57 N. J. Equity 1, where the restriction was against a building 'other than for the use or purpose of a private dwelling.' The restriction is in the singular, not in the plural. An apartment house is not strictly a private dwelling; it is a place for housing a number of people grouped in families assigned to different sections in the same structure."

Appellant submits further that the plaintiffs below are not entitled to injunctive relief because some of them live in two family or duplex houses in apparent violation of the restriction they have here sought to enforce. Whether this is true or not is irrelevant since some of the plaintiffs *do* live in private single-family residences, and the case, therefore, is properly before us if only at their instance. But the maxim which appellant intends to invoke, namely, that he who comes into equity must do so with clean hands, has no application in circumstances such as those before us. The Supreme Court made this clear in *Hartman v. Cohn,* 350 Pa. 41, 38 A. 2d 22: " 'The maxim referred to is to be applied where the wrong-doing is in reference to the matter in dispute (Dempster v. Baxmyer, 231 Pa. 28), and *must be connected with the controversy in litigation, so that it has in some way affected the equitable relations subsisting between the two parties,* arising out of the particular transaction. . . . There are limitations to the application of the rule, and the maxim *should not be applied where* an inequitable result would be reached.' " (Emphasis supplied.)

Appellees in their brief stress the point that the section in Philadelphia involved in this litigation contains no apartment houses and inferentially argue that the building of an apartment house here would be something in the nature of a calamity. This decision has nothing to do with the desirability or non-desirability *per se* of an apartment house in the community involved. This decision simply affirms the findings of the lower court that the restriction in Mauran's deeds, wisely or unwisely so far as the community is concerned, interdicts the building of an apartment house on the tract in question. And a restriction in a deed, once adopted by the Courts, has the force of law.

Decree affirmed, costs to be paid by appellants.