Kauffman *v.* Dishler, Appellant.

Argued November 17, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and AR-NOLD, JJ.

*Martin J. Vigderman,* with him *Samuel H. Landy* and *Freedman, Landy & Lorry,* for appellants.

*Benjamin Fertik,* for appellees.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, January 3, 1955:

The question concerns the scope of the term "house" as used in a building restriction in a deed.

The parties, being in agreement as to all the essential facts, entered into a stipulation in regard to them. It appears that one S. Leroy Wingate was the owner in 1923 of a large tract of vacant land known as "Woodcrest" in what is now the 50th Ward of the City of Philadelphia. It covers an area of about six city blocks, extending from Vernon Road on the south to Mt. Airy Avenue on the north and from Forrest Avenue on the east to Rodney Street on the west. On each of the lots therein that were sold and conveyed from time to time Wingate imposed the following building restriction: "That not more than one (1) house, same to be detached or semi-detached, and private garage shall be erected on each lot with a frontage of at least 24 feet . . . ." Defendants became the purchasers of a portion of the tract, namely, the block bounded by Gorgas Street on the north, Vernon Road on the south, Thouron Avenue on the east and Gilbert Street on the west. They have built 14 semi-detached two-story houses along the west side of Thouron Avenue between Gorgas Street and Vernon Road, 12 of which are not involved in the present controversy; the issue concerns only the two end structures at the southwest corner of Thouron Avenue and Gorgas Street and the northwest corner of Vernon Road and Thouron Avenue respectively. These two are identical in outward appearance with all the others except that

they are 3′ 6″ wider and 6′ 2″ longer in depth and that they each have two entrances on the Thouron Avenue front and a basement entrance on the side street; one of the front entrances leads to a stairway directly up to the second floor, so that each of these properties contains a basement apartment, a first floor apartment, and a second floor apartment, thus providing for occupancy by three families.

Plaintiffs own and occupy the house at the northwest corner of Thouron Avenue and Gorgas Street and brought the present bill in equity for an order on defendants to discontinue the erection of houses for occupancy by more than one family. The two corner structures were 85% completed when the bill was filed, but plaintiffs allege that they were misled and deceived by defendants and did not become aware until immediately before they began their action that those properties were to contain three-family apartments. The court below entered a decree in favor of plaintiffs, prohibiting the building by defendants of any three-unit apartment house. Defendants appeal from that decree, contending that the building restriction did not prevent them from constructing "houses" accommodating more than a single family.

In *St. Andrew's Church's Appeal,* 67 Pa. 512, 518, 519, where there was a restriction that no building should be built to be used for purposes other than as and for a private dwelling-house, it was held that the covenant was "directed against the building alone, not the subsequent use, and when a building is lawfully erected on either of the lots, so far as that building is concerned, the covenant is at an end." It was said (p. 520), that "covenants . . . which restrain a man in the free enjoyment of his property are not to be extended by implication."

In *Hoffman v. Parker,* 239 Pa. 398, 86 A. 864, where there was a restriction prohibiting the erection, inter alia, of any building or buildings other than dwellings, it was held that this did not prohibit the use by an occupant of the basement of the premises for the sale of food. The court pointed out that the objection raised was to the use to which the building was being devoted and not to the erection of the building, and (p. 399, A. p. 865) that "Such restrictions . . . are not extended beyond their plain and necessary intent." The building having been erected as a dwelling house there was no violation of the terms of the restriction merely because of the subsequent use to which it was put.

In *Johnson v. Jones,* 244 Pa. 386, 90 A. 649, the restriction was that "nothing but a . . . dwelling house . . . shall ever be erected upon any part of the said land." A purchaser prepared to erect thereon a series of buildings, each to be four stories in height, each story to contain two separate apartments or flats for use as housekeeping apartments. It was held that this did not involve any violation of the restriction. The court stated (p. 389, A. p. 650) that "all doubts are to be resolved against the restriction and in favor of the free and unrestricted use of the property."

In *Hamnett v. Born,* 247 Pa. 418, 93 A. 505, the restriction was that "no more than one dwelling house shall be erected or maintained on each forty (40) feet of land." It was held that this restriction was not violated by the erection of duplex houses, each designed for the occupancy of two families and so arranged as to furnish each family with a complete and independent set of apartments. It was again pointed out that the covenant was directed only against the construction, not its subsequent use. The court said (p. 420, A. p. 505) : "The fact that the building proposed is a

single structure intended for dwelling purposes brings it within what is permitted under the restriction; the fact that it is intended to accommodate a number of families does not bring it within what is forbidden."

In *Rohrer v. Trafford Real Estate Co.,* 259 Pa. 297, 102 A. 1050, where there was a restriction that but "a single dwelling house" should be erected on the lot, it was held that a duplex dwelling or apartment house did not constitute a violation of the restriction, the test being whether the building is a single structure intended for dwelling purposes and not whether it was intended to house more than one family. The court said (p. 299, A. p. 1051): "We agree with the court below that the stipulation was for a single house or structure, and not for a house for a single family; and that, if the latter had been intended, it would have been easy to say so." And it was once more repeated that " 'Covenants of this nature, which restrain a man in the free enjoyment of his property are not to be extended by implication.' "

In *Satterthwait v. Gibbs,* 288 Pa. 428, 135 A. 862, where there was a restriction that "not more than two houses . . . shall be erected on said premises," the court stated (p. 431, A. p. 863): "Covenants restricting the use of land are construed most strictly against one claiming their benefit and in favor of free and unrestricted use of property; a violation of the covenant occurs only when there is a plain disregard of the limitations imposed by its express words: . . . . It does not extend to limitations arising by implication: . . . . Under clause (a) of the restrictive covenant, only 'houses' could be built upon the property. 'House,' in common speech, embraces 'every form of structure for human habitation' . . . ." Accordingly it was held that the erection of an apartment house on the lot did not violate the restriction.

In *Peirce v. Kelner*, 304 Pa. 509, 156 A. 61, it was held that a restriction that "not more than one building other than a private stable and necessary outbuildings shall ever be erected or placed upon said lot of ground" did not forbid the construction of an apartment house. Cases hereinbefore referred to were cited with approval and the same principles were repeated (pp. 515, 516, A. p. 63), namely, that "Restrictions . . . [cannot] be enforced, unless they appear in express terms. . . . Reservations upon the use of land are never favored by the law; hence it follows that such provisions are never to be extended by implication."

It will thus be seen that all the authorities* are uniform to the effect that a restriction against the erection of a building other than a "house" or a "dwelling house" is a restriction only in regard to the type of construction and not the subsequent use, and that if any re-

---

* Cases which are seemingly contra to those thus cited are all readily distinguishable. In *Taylor v. Lambert*, 279 Pa. 514, 124 A. 169, *Fox v. Sumerson*, 338 Pa. 545, 13 A. 2d 1, and *Pehlert v. Neff*, 152 Pa. Superior Ct. 84, 31 A. 2d 446, the restriction was against any building designed for any purpose other than a *"private* dwelling house," or "a *private* residence," and it was held that the word "private" excluded buildings used for residential purposes of a *public* character, such as hotels and general public boarding or apartment houses, an apartment house not being strictly a *private* dwelling. In *Pocono Manor Association v. Allen*, 337 Pa. 442, 12 A. 2d 32, the restriction allowed only buildings "for cottage residences and dwelling purposes," and it was held that the dominant idea of *"cottage* residences" excluded apartment houses or multiple dwelling houses. In *Gerstell v. Knight*, 345 Pa. 83, 26 A. 2d 329, it was held that a covenant that "one *residence* only shall be built" on the tract was a restriction on the *use* of the land and that the word "residence" meant that only one place of abode should be built for occupation by one person alone or with his family. The court said (p. 85, A. p. 330) that "If . . . they had restricted the use of the land to one *dwelling house* . . . an apartment house would have been within this agreement."

striction on use is intended it should be plainly expressed and not left to implication. Of course, the term "house," like all other terms, does not have an unlimited connotation. While it is defined in Webster's International Dictionary as "A structure intended or used for human habitation; especially, a human habitation which . . . is intended for the private occupation of a family or families," its common and accepted import certainly does not cover the conception, for example, of a large modern apartment building. But there is a difference between such a building and a structure which in size and appearance, as in the present case, conforms to the popular idea of a "house" and is generally so regarded even though it may be occupied by two or three families and therefore become designated as an "apartment house." It is this difference that distinguishes the case of *Bennett v. Lane Homes Inc.*, 369 Pa. 509, 87 A. 2d 273,—the case which the court below erroneously thought was determinative of the present issue. There the restriction was that "not more than one house, same to be detached or semi-detached, and private garage to be used in connection therewith, shall be erected on each lot with a frontage of at least 24 feet." It was held that this restriction prevented the erection of a three-story, 34-unit apartment building built on a frontage of 9 lots on one street and 6 lots on another, with overall dimensions of 151 feet by 160 feet, and which, since it was intended to house 34 families, would require a multitude of mechanics, janitors, and other service personnel. And while it might be objected that the difference thus pointed out is merely one of degree, we may remind ourselves that, as Mr. Justice HOLMES observed, many, if not most, legal questions resolve themselves into problems of degree rather than of kind. A 34-family apartment building is *not*, in ordinary parlance, a "house," but a two-

story structure practically identical in size and appearance with all the other houses on the block *is* a house, even though it may be referred to as an "apartment house" if it accommodates two or three families.

It is our conclusion, therefore, that there is nothing in the present restriction that "not more than one house shall be erected on each lot" which would justify an interpretation that would make it read: "that not more than one *single-family* house shall be erected on each lot." If the restriction were so intended it should have been so expressed. And in view of that conclusion it becomes unnecessary to discuss other questions raised by defendants, such as plaintiffs' laches, their acquiescence in previous violations of the restriction, the alleged change in the neighborhood, and the admissibility of testimony of the original grantor, Wingate, that the restriction was not intended to limit the number of families in the individual dwelling and that by the expression "one house" there was meant merely "a single edifice."

The decree is reversed and the bill dismissed at the cost of plaintiffs.

