Ratkovich *v.* Randell Homes, Inc., Appellant.

64

· Argued November 18, 1960.   Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

reargument refused April 17, 1961.

*Reuben E. Cohen,* with him *Nathan B. Feinstein,* and *Cohen, Shapiro and Cohen,* for appellant.

*Henry T. Reath,* with him *John M. Ross,* and *Duane, Morris & Heckscher,* for appellee.

Opinion by Mr. Justice Benjamin R. Jones, March 13, 1961:

The sole question presented on this appeal is whether a restrictive covenant in a deed which provides that "not more than one house exclusive of a private garage shall be erected on each lot" prohibits in any manner the erection of a duplex and/or four unit multi-family house?

Randell Homes, Inc. (Randell) owns three lots in a tract of land called Griffith Manor located on the southeast corner of Hartel and Large Streets in the northeast section of Philadelphia. Joseph and Mary Ratkovich (Ratkovich) own three adjacent lots on Hartel Street in Griffith Manor upon which they have constructed a one-story ranch type house.

Griffith Manor is comprised of some 751 lots. In 1925, a deed restriction was created on *all* the lots, the pertinent provisions of which state: ". . . that not more than one house exclusive of a private garage shall be erected upon any one lot . . . and no house erected shall cost less than $3000 to build and the front line of each home to be built is to set back at least eight feet from the front building line."

Randell began the construction[1] of two buildings (duplex) each containing two apartments and one building containing four apartments.

On April 16, 1959, Ratkovich filed a complaint in equity in the Court of Common Pleas No. 4 of Philadelphia County against Randell.[2] This complaint alleged "that the *erection* of such buildings" was in

---

[1] The construction work ceased when the complaint in equity was served except to back fill in order to preserve the foundations which were already completed.

[2] Paragraph 7 of the complaint states: "That . . . [Ratkovich] bring this action for themselves and on behalf of the residents and now owners of other land in the tract covered by said restrictions, said residents and home-owners join in this Complaint

violation of the *"building restrictions"* and prayed that Randell be ordered to "discontinue and cease the erection of *buildings for occupancy by more than one family"* and for "such further relief as the court may deem proper." (Emphasis supplied).

The chancellor in his adjudication decided that the covenant restricted only the *type* and not the *use* or *occupancy* of the buildings to be erected. The chancellor further found that the restriction had been neither abandoned nor waived by Ratkovich, that it was still of substantial benefit to them and decreed nisi "that any house erected by . . . [Randell] on any of its lots shall be substantially the same as . . . [Ratkovich's] house at 2107 Hartel Street, Philadelphia, or other houses in the immediate vicinity, in size and outward appearance, design and type of construction, and that each house built by . . . [Randell] shall conform in every way to the popular idea or conception of a *house."* Randell's exception to this decree on the ground of vagueness was sustained by the court en banc. The court en banc concluded that the words "immediate vicinity" in the chancellor's decree meant the lots adjacent to and across the street from Randell's lots, and, since there were ranch type houses one story in height on those lots, *the court decreed that any building erected on Randell's lots would be required to be* "a ranch type house substantially the same as [Ratkovichs'] house in size and outward appearance." From that final decree, Randell appeals.

Randell contends: (1) that, the special relief prayed for not being grantable, the complaint should have been dismissed; (2) that the restrictive covenant permits the erection of the structures contemplated

by their joinder in writing annexed hereto and made a part hereof." This complaint was signed by Ratkovich and nine other persons, six from Hartel Street and three from Chandler Street.

for construction; (3) that the final decree of the court below constitutes an unwarranted and erroneous judicial extension of the terms of this restrictive covenant.

In regard to the first contention, we agree with the court below in its conclusion that the present restrictive covenant was directed not against the *use* and *occupancy* but the *type* of building which might be erected and that Ratkovich was not entitled to have the erection of the proposed structures restrained solely on the ground that it was a "building for occupancy by more than one family" as requested in the prayer for special relief. Randell now urges that, since Ratkovichs' prayer in the complaint was directed to the *use* and *occupancy* rather than *type* of construction, and since the court found against Ratkovich on this issue, the court should have dismissed the complaint. While it has been generally stated that relief in equity must be limited to the specific relief prayed for in the complaint (*The Cumberland Valley Railroad Company's Appeal*, 62 Pa. 218, 230; *Zook v. Pennsylvania Railroad Co.*, 206 Pa. 603, 609, 56 A. 82; *Spangler Brewing Company v. McHenry*, 242 Pa. 522, 528, 89 A. 665; *Ebur v. Alloy Metal Wire Co.*, 304 Pa. 177, 185, 186, 155 A. 280), yet, where there is a prayer for *general* relief, the rule enunciated by this Court in *Meth v. Meth*, 360 Pa. 623, 62 A. 2d 848 governs. In *Meth* we said (pp. 625, 626) : " 'Under the prayer for general relief, a decree which accords with the equities of the cause may be shaped and rendered; the court may grant any appropriate relief that conforms to the case made by the pleadings although it is not exactly the relief which has been asked for by the special prayer.' "

In the instant case, the complaint alleges "that the erection of such buildings is in violation of the conditions and building restrictions imposed" upon the

lots owned by Randell. It is thus obvious that the pleadings questioned not only the *use* and *occupancy* but also the *legality* and *validity* of the proposed structures. The decision not to dismiss the complaint was a matter peculiarly within the province of the court below and it committed no error in this respect. This contention of Randell is without merit.

Randell's second contention is directed to the interpretation and construction of the word "house" as used in the restrictive covenant and the court's conclusion in that respect as embodied in its final decree.

The scope and meaning of the restrictive phrase "not more than one house shall be erected" is primarily a question of intention. In considering this question and endeavoring to determine the scope of this particular restriction, certain well settled legal principles are to be applied, keeping in mind a public policy to encourage rather than discourage the unrestricted use of property.

The applicable legal principles were succinctly set forth by Chief Justice STERN, in *Jones v. Park Lane for Convalescents, Inc.*, 384 Pa. 268, 120 A. 2d 535 (p. 272): "Restrictions on the use of land are not favored by the law because they are an interference with the owner's free and full enjoyment of his property; that nothing will be deemed a violation of a restriction that is not in plain disregard of its express words; that there are no implied rights arising from a restriction which the court will recognize; that a restriction is not to be extended or enlarged by implication; that every restriction will be construed most strictly against the grantor and every doubt and ambiguity in its language resolved in favor of the owner."

The word "house" is susceptible of various meanings. It has been said that "house" is all-inclusive

and may include any and every kind of structure, depending upon the context in which it is used and the purpose sought to be effected: 26 C.J.S., Deeds, §164 (2). In *Satterthwait v. Gibbs et al.*, 288 Pa. 428, 135 A. 862, we stated (p. 431): " 'House,' in common speech, embraces 'every form of structure for human habitation:' [citing case]. In a legal sense, however, it is more comprehensive and may mean a building regardless of habitation." In accord with these principles, the word "house" in restrictive covenants has often been construed not to prohibit the erection of a duplex and/or an apartment house.[3]

Randell contends that the structures which it proposes to erect are permitted by the restriction. On the other hand, Ratkovichs contend that this situation is governed by *Bennett v. Lane Homes, Inc.*, 369 Pa. 509, 87 A. 2d 273, wherein a defendant was enjoined from erecting a three story, 34-unit apartment house upon a lot covered by a restriction that " 'not more than 1 house, same to be detached or semi-detached and private garage to be used in connection therewith, shall be erected on each lot' " and a further restraint that any such structure erected should cost at least $4000. Mr. Justice MUSMANNO, speaking for a unanimous court, construed the word "house" to be not all embracing and that its use in that situation in a restricted sense meant a "single private dwelling". Ratkovichs contend that *Bennett* narrows the meaning heretofore ascribed to the word "house" as

---

[3] See, e.g., *Johnson v. Jones*, 244 Pa. 386, 90 A. 649; *Hamnett v. Born*, 247 Pa. 418, 93 A. 505; *Rohrer v. Trafford Real Estate Co.*, 259 Pa. 297, 102 A. 1050; *Harmon v. Burow*, 263 Pa. 188, 106 A. 310; *Satterthwait v. Gibbs*, 288 Pa. 428, 135 A. 862; *Peirce v. Kelner*, 304 Pa. 509, 156 A. 61; *Pocono Manor Ass'n. v. Allen*, 337 Pa. 442, 12 A. 2d 32 (by implication); *Gerstell v. Knight*, 345 Pa. 83, 26 A. 2d 329 (dictum); *Kauffman v. Dishler*, 380 Pa. 63, 110 A. 2d 389.

used in restrictions. There is no merit in this contention.

As we have already stated, the meaning and scope attributable to the word "house" often depends upon the context in which it is used, that is, that it may often depend on its connection with other words in the sentence which may restrict and qualify its meaning. In *Bennett,* supra, the Court concluded that the word "house" meant a "single private dwelling" not merely because the word "house" was used but rather because other words and phrases contained in the restriction qualified and restricted the meaning of the word. Bearing in mind that the structure proposed to be erected in *Bennett was a three story 34-unit apartment building,* the Court found that such structure was prohibited by the intent inherent in the language of the restriction. The phrases "with private garage to be used in connection therewith" and "detached or semi-detached" together with the minimum required expenditure—$4000—and the word "house" were construed to indicate an intent on the part of the creator of the restriction to prohibit and exclude from the land covered a three story 34-unit apartment building. Giving full consideration to the factual situation and the language of the restriction in *Bennett,* the Court was fully justified in concluding that the word "house" was not intended to be so all-inclusive as to embrace a building with 34 apartments. The construction of the word "house" in *Bennett*—an entirely dissimilar situation—neither controls nor governs the present issue.

The court below purportedly decided the present issue in accord with the principles enunciated in *Kauffman v. Dishler,* 380 Pa. 63, 110 A. 2d 389, wherein a restriction " 'that not more than one (1) house, same to be detached or semi-detached, and private garage shall be erected on each lot' " was held not

to prohibit the erection of two three-unit apartment houses. The Court there held that "a two story structure practically identical in size and appearance with all the other houses on the block is a house." The court *did not* hold that such a structure as there proposed must conform to all the other houses in the block in size and appearance. To so hold would be a violation of the principle that the terms of a restriction are not to be extended by implication: *St. Andrew's Lutheran Church's Appeal,* 67 Pa. 512, 520.

An examination of the terms of the present restriction and a consideration of the type of structures proposed to be erected reveals no violation threatened to the restriction. The restriction is silent as to the size, appearance, design and character of construction which may be utilized on these lots and there is nothing in the provisions of the restrictions which interdicts the erection of these proposed structures.

Had the creator of the instant restriction desired to restrict the use of these lots to single family dwellings or prohibit the erection thereon of two or four units for multiple family dwelling, it would have been easy to so word the restriction. Courts should not attempt to remedy the omissions of those creating restrictive covenants and extend, by implication, a restraint on the use of land by writing into a restriction that which is not therein clearly expressed.

Randell is free to erect the proposed structures. The provisions of the final decree imposing on Randell the obligation to erect *only* one story ranch type buildings similar in size and outward appearance to Ratkovichs' home were clearly unwarranted.

In view of the conclusion reached, Randell's other contentions need not be considered.

Decree affirmed, as modified, and the record remanded to the court below for modification of the decree as indicated in this opinion. Costs on Ratkovich.