## Tiche v. Fassett

*M. L. McBride, Jr.,* for exceptant.

ACKER, J., March 5, 1973.—Betty R. Tiche, formerly the wife of Howard E. Fassett, has taken exceptions to a proposed schedule of distribution of a trustee. The funds arise from the sale of a residence owned as tenants by the entireties following the appointment of a trustee by this court for sale pursuant to the Act of May 10, 1927, P. L. 884, sec. 2, 68 PS §502. Testimony was taken from which the following facts are found.

## FINDINGS OF FACT

1. Betty R. Fassett Tiche and Howard E. Fassett were married 27 years prior to his abandoning plaintiff and their two minor children on January 16, 1970.

2. At that time living with the parties was their son, James, age 17, and Susan, age 15.

3. There was no explanation or excuse for the abandonment by Howard E. Fassett, and the wife-plaintiff has never heard from him nor known of his whereabouts since that time.

4. Wife-plaintiff secured a divorce on April 19, 1972, from defendant on the grounds of desertion which was unopposed.

5. On October 24, 1966, the parties to this action purchased and received title to the subject property,

being a house and lot located on Tidball Avenue, Grove City, Pa.

6. At the time of the purchase, a mortgage was placed against the property in the total amount of $14,-000 with the predecessor of the present First Seneca Bank and Trust Company.

7. At the time of the sale, there was owing upon the mortgage $6,640.20, which has been deducted from the total sale price of the property of $21,500, and has been paid to the bank to clear the mortgage.

8. Wife-plaintiff made all mortgage payments on the property from the time of the desertion of defendant in January 1970 through the time of sale in October of 1972 in the total amount of $5,284.62, the payments being $155.43 per month.

9. In addition, plaintiff paid real estate taxes on the property for the year of 1970, $294; 1971, $313.60; 1972, $321.44, or a total of $929.04.

10. Finally, plaintiff paid to her counsel, McBride and McBride, Grove City, Pa., for legal services in connection with this matter the amount of $550. Therefore, for out-of-pocket expenses she claims $6,763.66. In addition, plaintiff claims between $150 and $200 per month for support for herself and her two minor children during the subject period.

11. All of the above-mentioned claims are inferentially denied in the report of the trustee.

12. From the testimony received, it appears that no support was paid by defendant for wife-plaintiff or the two minor children, James, age 17, and Susan, age 15, from the time of the desertion of January 16, 1970, to the date of the hearing, and that a reasonable support payment per month would be between $150 to $200 for wife-plaintiff and the children combined.

13. The complaint in this case fails to inform the reader that anything other than a division of the mon-

eys after the sale of the property is prayed for. There is no prayer for moneys for mortgage payments, real estate taxes, counsel fees or support payments.

14. Notice was given by publication. The relief advertised in the publication as paraphrased from the complaint is, "You are hereby directed to file an answer to said complaint in equity within 20 days from the date of publication of this notice, or a judgment by default may be entered against you, including a decree of partition and the appointment of a trustee to make public sale of the property and such further relief as may be deemed necessary and proper."

Under the prayer for general relief, a decree which accords with the equities of the case may be shaped and rendered; the court may grant any appropriate relief that conforms to the case made by the pleadings, although it is not exactly the relief which has been asked for by the special prayer: Meth v. Meth, 360 Pa. 623, 62 A. 2d 848 (1949).

"As early as 1868 this Court recognized that under a general prayer for relief an equity court may grant such relief as is 'agreeable' to the case pleaded and proven even though the relief granted differs from the specific relief prayed for . . . this doctrine has been repeatedly reaffirmed": Dombrowski v. Philadelphia, 431 Pa. 199, at 219, 245 A. 2d 238 (1968).

To demonstrate the divergence permitted in Linett v. Linett, 434 Pa. 441, 254 A. 2d 7 (1969), where the prayer was for an injunction against the defendant from procuring a divorce where the order was an injunction not only as to that divorce but any divorce that "may have been obtained." This was held to be within the general prayer for relief.

In Ratkovich v. Randell Homes, Inc., 403 Pa. 63, 169 A. 2d 65 (1961), it was contended that the prayer in the complaint was directed to the use and occupancy rather

402

than the type of construction. Since the court found against plaintiff as to that issue, it was contended that the complaint should have been dismissed. The complaint was held to be sufficient to consider the legality of the structure and come within the general prayer for relief. On the other hand, in Pennsylvania General Insurance Company v. Barr, 435 Pa. 456, 257 A. 2d 550 (1969), plaintiff did not plead mistake mutual or for a reformation of an instrument. Rather, the complaint sought only interpretations of certain contractual provisions. It was concluded that the prayer for "such other and further relief as may be just and reasonable" could not be deemed to have properly presented the issues of mistake and reformation to the court below.

In the instant case, the exceptant is proposing that a defendant property owner upon whom no personal service was ever obtained should be bound by an order taking away his one-half interest in property held as tenants by the entireties or at least substantially reducing it by his failure to pay the mortgage, attorney's fees and support. We believe that due process requires that he be advised at least generally in this equity action what relief is sought.

The instant case arises from exceptions to the trustee's accounting. It is contended that the trustee erred in not allowing moneys for support, attorney's fees, repayment of mortgage and taxes. However, there is nothing in the record to show that a request was ever made upon the trustee for such moneys.* Therefore, he was as much in the dark about the present claim by the record as would be the absent husband.

In Lazare v. Lazare, 365 Pa. 591, 76 A. 2d 190 (1950), section 3 of the act is construed, page 595: "Indeed,

---

* The trustee informs the court upon inquiry that the exceptant orally requested relief.

that very language of Section 3 upon which defendant bases her contention, viz. 'shall be conclusively deemed to be one-half of the value of the property' . . . further confirms this thought."

The above was quoted for the proposition that the statute must be rigidly construed and that the amending Act of 1949 was intended by the legislature to modify the law only to the extent necessary to enable divorced parties holding tenants by the entireties to petition a court for a sale of the property and to give each party an equitable share in the proceedings of such sale.

The previous Act of May 10, 1927, P. L. 884, sec. 3, stated that the interest of the respective tenants by the entireties shall be conclusively deemed to be one-half of the value of the property. The effect of the amendment of 1949 is merely to change the time for the determination of an equal division of the sale of the proceeds after the payment of expenses of sale to the time of the sale as opposed to the time of divorce. The rights of the parties are severed under the Act of 1949 at the time of the divorce and shall eliminate the incident of survivorship: Morehead v. Overton, 39 D. & C. 2d 595 (1965).

The exceptant relies upon the Act of May 10, 1927, P. L. 884, as amended, 68 PS §503. This statute requires that after the payment of expenses the money shall be divided equally between the parties, subject, however, to the deduction therefrom of the amount of any lien entered of record jointly against both of the respective parties together with any interest due thereon and docket costs.

It appears clear that attorney's fees for counsel for the wife cannot be granted for "It is the general rule in Pennsylvania that a court is powerless to grant counsel fees in the absence of statutory authorization to the

contrary or contractual obligation": Drummond v. Drummond, 402 Pa. 534, 167 A. 2d 287 (1961); 414 Pa. 548, 200 A. 2d 887 (1964); McManus v. McManus, 44 D. & C. 2d 358, 16 Chester 175 (1968).

The majority of the lower court cases have held that the statute must be rigidly enforced and that claims not of record may not be considered. Sanelli v. Sanelli, 103 Pitts. L. J. 90 (1954), held that no payments on a mortgage prior to the Divorce Act of May 17, 1949, P. L. 1394, 68 PS §501, could be considered. Leavy v. Leavy, 16 D. & C. 2d 698 (1958), held that liens not of record could not be allowed.

An intervenor under an assignment was not permitted to recover in Davis v. Davis, 88 D. & C. 420 (1954).

Moneys loaned from a spouse to a spouse could not be recovered: Belles v. Edwards, 41 Luz. 213 (1948).

Even a claim to pay one-half of the funeral bill was not allowed: Barlet v. Barlet, 4 Lyc. 111 (1953).

Equal division was required despite claims by the spouses inter se: Jamieson v. Jamieson, 14 Chester 4 (1965). The interest of each spouse is determined to be conclusively one-half according to Loose v. Loose, 50 Berks 66 (1957), for the court is not permitted to consider matters not specifically set forth in the act: Carney v. Carney, 5 Bucks 23 (1955). Nor can there be consideration of unliquidated claims: Weitknecht a/k/a Weaver v. Weitknecht, 34 Northamp. 189, 71 York 113 (1957). Even a support order was not considered in Schlesigner v. Munley, 67 Lack. Jur. 81 (1966).

Petitioner relies upon three cases where some relief of the type now prayed for was granted. In all, the husband appeared and defended. In Johns v. Johns, 52 D. & C. 2d 99 (1971), the complaint in equity specifically prayed that there be an accounting for certain

rentals and other income alleged to have been received from defendant from jointly held assets. A trial without a jury was held, the matter briefed and oral argument conducted during which testimony was taken as to the income of the husband, his work record, etc. The court did order that he pay reasonable support for his wife during the period of desertion and that he reimburse her for moneys paid on a joint obligation at a bank. However, defendant was apprised of the issues which were litigated after personal service upon him.

Exceptant also relies upon Marino v. Marino, 79 D. & C. 597 (1951), where by stipulation the parties asked the court to dispose of matters between them. So doing, the court denied the husband a claim for a portion of the rentals received by the wife while in possession where the wife was supporting their child, repairing the property and carrying a mortgage. The husband was also denied a claim for the value of certain insurance policies cashed by the wife. The wife, however, was not allowed a claim for past maintenance of a minor daughter on the view that maintenance could not be made retroactive but the wife was allowed a credit for carrying charges paid on the property during a separation period before divorce and for one-half of mortgage amortization paid during the same period.

Finally, exceptant relies upon Schlesinger v. Munley, supra. There, by agreement, the parties stipulated that after the sale the court could determine whether payments made by defendant since the divorce against the purchase money, mortgage and taxes and insurance costs included in the property purchase financing agreement were to be chargeable against the property so as to require plaintiff to pay one-half thereof. Under that agreement, the court concluded that the former husband of plaintiff could recover one-half of the mort-

gage payments but that a support order in quarter sessions court against defendant being a personal obligation unconnected with the real estate could not be considered in partition proceedings.

Therefore, in the cases relied upon by exceptant, there was personal service upon the husband and he had either agreed to a disposition of the matter by the court or it was raised by pleadings during the course of the proceedings so that he was fully apprised of the issues to be determined by the court.

By the Act of May 23, 1907, P. L. 227, sec. 2, as amended, 48 PS §132, when a man has separated himself from his wife and children without reasonable cause or whose whereabouts is unknown and being of sufficient ability has neglected or refused to provide suitable maintenance for his wife and children, an action may be had against his real or personal property for suitable maintenance. The court further has the authority to direct a seizure and sale or mortgage of such estate as will provide the necessary funds for such maintenance. Service upon defendant is to be made as in other actions at law or in equity.

Of course, pursuant to the Married Women's Property Acts and in particular the Act of May 1, 1913, P. L. 146, sec. 1, 48 PS §114, a deserted wife may maintain an action in assumpsit against her husband for the amount expended by her out of her separate estate for the maintenance of her and her children. The wife has failed to resort to either statute and, therefore, has no judgment or support order.

The conclusion of this opinion is arrived at with a disturbing feeling as to its consequences. Here, a husband obviously abandoned his wife and two minor children. Somehow she paid the mortgage and supported the children. It cries out for relief. Yet this court

is obligated to dismiss the exceptions which will result in a confirmation of the approval of a distribution of the funds by the trustee. The trustee was correct. The moneys of the abandoning husband must be paid into court. This, however, does not leave the wife without a remedy. Rather, it permits the remedy be properly pursued.

Hence, this order.

## DECREE NISI

And now, March 5, 1973, the exceptions to the proposed schedule of distribution of trustee are dismissed.

It is hereby ordered that the moneys deducted by the trustee for the payment of costs of sale as set forth in paragraph 5 of the petition for distribution are hereby confirmed.

The bondsman of the trustee which has posted a bond in the amount of $40,000 is hereby discharged and the bondsman is released from further liability on account of the same.

The trustee shall pay to Betty R. Tiche the sum of $6,670.69, the receipt of which shall not in any way prevent or exclude her from taking exceptions to the decree nisi.

Finally, a decree nisi is entered as to the proposed distribution to the Prothonotary of Mercer County in the amount of $6,670.69 to be held for Harold E. Fassett at interest; that if within 20 days of notice of the filing of adjudication exceptions are not filed to the rulings on objections to evidence, statements or findings of fact to conclusions of law, or to the decree nisi, a final decree shall be entered by the prothonotary on praecipe.