487 A.2d 965

Wendell W. YOUNG, III and Marilyn L. Young, H/W

v.

Anthony CERONE and Marie Cerone, H/W, Appellants.

Superior Court of Pennsylvania.

Argued Sept. 4, 1984.

Filed Jan. 23, 1985.

Bruce A. Franzel, Philadelphia, for appellants.

George W. Berkelbach, III, Philadelphia, for appellees.

Before CIRILLO, OLSZEWSKI and MONTGOMERY, JJ.

CIRILLO, Judge:

Appellants, Anthony Cerone and Marie Cerone, appeal a judgment of the Court of Common Pleas of Philadelphia County directing them to remove a fence from their property and enjoining them from constructing any fence less than fifteen feet from the side and rear boundaries of their property and less than twenty-five feet from the front boundary facing the street. We vacate that judgment.

Appellants and appellees, the Youngs, are next-door neighbors in the Crestmont Farms residential development

in northeast Philadelphia. This development was originally farmland, conveyed in 1926 to the Crestmont Farms Improvement Company, Inc. Since then, the Company has ceased to exist, and the land has been subdivided into approximately seventy lots for construction of detached residences.

In 1980, appellants began construction of a chain link-and-wood slat fence on the boundary between their lot and appellees'. Appellees protested, claiming that any such construction would violate deed restrictions imposed by the original grantor. However, they later requested appellants to delay building the fence, so that the City of Philadelphia could survey the lots. After the survey, appellants resumed construction.

Appellees then filed a complaint in equity, seeking an injunction forcing appellants to dismantle the fence and prohibiting them from any further construction. Appellees alleged that the fence was in violation of Subdivision 6 of the deed restrictions, which states, in pertinent part:

> No building, fence, wall or other structure shall be commenced, erected or maintained; nor shall any addition to or change or alteration thereon be made until the plans and specifications showing the nature, kind, shape, height, materials, floor plans, color scheme, location and approximate cost of such structure and the grading plan of the plot to be built upon shall have been submitted to and approved in writing by the Grantee and a copy thereof as finally approved, lodged permanently with the Grantee.... The Grantee shall have the right to refuse to approve any such plans or specifications or grading plan which is not suitable or desirable in its opinion for aesthetic or other reasons and in passing upon such plans, specifications and grading plan[, i]t shall have the right to take into consideration the suitability of the proposed building or other structure and of the materials of which it is to be built to the site upon which it is proposed to erect the same[,] the harmony thereof with the surroundings[,] and the effect of the building or other structure or

the roadway as planned on the outlook from the adjacent or neighboring property.

The trial court, sitting without a jury, held that Subdivision 6 was not applicable. The court reasoned that the "Grantee" referred to in that restriction was the defunct Improvement Company, and that there was no successor grantee. However, the court held that the fence violated Subdivisions 4 and 5 of the deed restrictions. Subdivision 4 states:

No building or part thereof shall be erected or maintained on any part of the said tract closer to any street than 25 feet and at least 15 feet from any side or rear lot line except as hereinafter set forth and except as to eight lots of 50 feet each fronting on Orchard Lane. Covered porches.... may encroach ... not more than 12 feet. Steps, uncovered porches and terraces ... may be built and maintained on any part of such restricted areas. Single story bar, low and criel windows ... may encroach on such restricted areas by projection not more than 3 feet....

Subdivision 5 provides:

Free or open spaces shall be left on every plot built upon on both sides or every building erected thereon which free spaces shall extend the full length of the plot and shall be in addition to and independent of any free spaces, pertaining to or required for any other building or any other plot. No part of any building ... shall encroach on these free spaces. The aggregate width of any such free spaces required on both sides of any building shall not be less than 15 feet on either side except 8 lots of 50 feet front, each on Orchard Lane. Steps, uncovered porches and terraces ... may be built and maintained on any part of such restricted areas[;] one story extensions of the building, no part of any wall of which is more than 15 feet above the level of the first floor of the building[,] may encroach upon such free spaces by projecting thereon not more than 7 feet, but not nearer than 8 feet to either exterior limit of such free spaces. Covered porches ... may encroach upon such free spaces by projecting

thereon not more than 7 feet, but not nearer than 8 feet to either exterior limit of such free [space]. . . .

The court concluded that these two subdivisions demonstrated the grantor's intent that "free or open spaces" remain between any homes built in the development, and that appellants' fence frustrated this intent. Appellants filed exceptions, which were dismissed.

Appellants raise four allegations of error: 1) that the chancellor erred in applying Subdivisions 4 and 5 to their fence; 2) that the chancellor erroneously based her decision on matters raised *sua sponte*, specifically, the set-back restrictions of Subdivision 4; 3) that appellees should have been estopped from obtaining equitable relief because they requested appellants to delay construction of the fence, pending the City survey; and 4) that appellees should have been estopped from obtaining equitable relief because they have violated deed restrictions.

We need not reach appellants' second contention, because we find that the chancellor erred in applying Subdivisions 4 and 5, whether they were raised by the parties or the court.

■■■ Deed restrictions are not favored, because they interfere with a landowner's fundamental, Constitutional right to use his property as he pleases. *See Parker v. Hough,* 420 Pa. 7, 215 A.2d 667 (1966); *Cleaver v. Board of Adjustment,* 414 Pa. 367, 200 A.2d 408 (1964); *Burns v. Baumgardner,* 303 Pa.Super. 85, 449 A.2d 590 (1982); *Tate v. Moran,* 264 Pa.Super. 540, 400 A.2d 217 (1979). They are therefore strictly construed against the grantor, and any ambiguities are resolved in favor of the landowner. *Schulman v. Serrill,* 432 Pa. 206, 246 A.2d 643 (1968); *Mishkin v. Temple Beth El of Lancaster,* 429 Pa. 73, 239 A.2d 800 (1968); *Jones v. Park Lane for Convalescents, Inc.,* 384 Pa. 268, 120 A.2d 535 (1956). In addition, restrictive covenants will not be extended or enlarged by implication. *Ratkovich v. Randell Homes, Inc.,* 403 Pa. 63, 68, 169 A.2d 65, 68 (1961); *Jones, supra,* 384 Pa. at 272, 120 A.2d at 537; *DiCarlo v. Cooney,* 282 Pa.Super. 477, 423 A.2d 3 (1980); *Tate, supra.*

■ Here, Subdivisions 4 and 5 concern the construction and location of buildings or "parts thereof" on Crestmont Farms lots. Appellants' fence is outside the clear, unambiguous terms of these restrictions. We will not extend or enlarge the meaning of those terms in order to hold otherwise and include the fence within them. *DiCarlo* and *Tate, supra.*

Appellants' last two arguments may be treated together, as both raise estoppel claims and involve the consent requirement of Subdivision 6.

■ The chancellor found that Subdivision 6 was unenforceable because there was no successor to the original grantee. To the contrary, an original grantee's successors are the owners of lots in the conveyed and subdivided property. Each of these owners has a dominant estate over the estate of his neighbor, so that he may enforce valid deed restrictions intended to protect his enjoyment of his property. *Kajowski v. Null,* 405 Pa. 589, 599–600, 177 A.2d 101, 106 (1962); *Bennett v. Lane Homes,* 369 Pa. 509, 87 A.2d 273 (1952); *Benner v. Tacony Athletic Association,* 328 Pa. 577, 196 A. 390 (1938). This right to enforce is limited, however, to those owners whose properties adjoin or are adjacent to an offending lot, since only their rights to enjoy their properties will be affected by violations of such restrictions. The language of Subdivision 6 supports such a limitation, by referring to the effect of proposed construction "on the outlook from the *adjacent or neighboring property*" (emphasis supplied). These owners are therefore the persons whose consent must be obtained under restrictions requiring the "grantee's" consent. Their consent may not be withheld arbitrarily, capriciously or unreasonably, as this would violate the rights of the servient estate's owner. *Parker, Cleaver, Burns* and *Tate, supra.*

■ Thus, appellees, as appellants' next-door neighbors, had standing to seek enforcement of Subdivision 6. However, in *Blofsen v. Cutaiar,* 460 Pa. 411, 333 A.2d 841 (1975), our Supreme Court stated:

Equitable estoppel applies to prevent a party from assuming a position or asserting a right to another's disadvantage inconsistent with a position previously taken.... [T]he person inducing the belief in the existence of a certain state of facts is estopped to deny that the state of facts does in truth exist, over a different or contrary state of facts as existing at the same time, or deny or repudiate his acts, conduct or statements.

*Id.*, 460 Pa. at 417, 333 A.2d at 844. *See also Novelty Knitting Mills, Inc. v. Siskind*, 500 Pa. 432, 457 A.2d 502 (1983).

■ The chancellor found that, pursuant to appellees' request, appellants delayed construction until the City of Philadelphia surveyed the parties' lots. This request indicated appellees' consent to the fence's construction, provided it was built wholly on appellants' property. Having made this representation, appellees cannot now claim that they consistently protested the fence's construction, where appellants, relying on the representation, postponed construction and then incurred expense in completing it. The chancellor therefore erred in finding that appellees' representations about the survey did not estop them from seeking the instant injunction.

Finally, appellants claim that appellees may not assert Subdivision 6 now, because they themselves have violated it by constructing a dog kennel in their yard. This conduct, appellants allege, places appellees before us with "unclean hands," so that they should be barred from obtaining equitable relief.

■ We agree. The equitable doctrine of "unclean hands," to be raised as a defense, requires that the plaintiff's allegedly improper conduct affect the equitable relations between the parties and be directly connected with the matter in controversy. *Stauffer v. Stauffer*, 465 Pa. 558, 351 A.2d 236 (1976); *Spring City Foundry Co. v. Carey*, 434 Pa. 193, 252 A.2d 666 (1969); *Harbor Marine Co. v. Nolan*, 244 Pa.Super. 102, 366 A.2d 936 (1976) (allocatur refused). Here, appellees' dog kennel, like appellants'

fence, relates to the restrictions of Subdivision 6, which is "the matter in controversy" among the parties.

■ In addition, appellees' kennel evidences a change in the Crestmont Farms neighborhood such that Subdivision 6 is no longer valid. A deed restriction will not be enforced "where there has been a change of surroundings in the neighborhood or in the character of the improvements and in the purposes to which the restrictions are applied." *Pastore v. Lake Shore Maintenance Association*, 197 Pa. Super. 419, 423, 178 A.2d 776, 778 (1962); *see also Scott v. Owings*, 223 Pa.Super. 481, 302 A.2d 423 (1973) (allocatur refused). A restriction is invalid under this rule if its purpose and intent have been altered and it no longer provides substantial benefit to the dominant estate. *Rieck v. Virginia Manor Co.*, 251 Pa.Super. 59, 380 A.2d 375 (1977) (allocatur refused). For example, in *Rome v. Rehfuss*, 391 Pa. 82, 137 A.2d 233 (1958), the original grantor imposed a restriction meant to exclude industry and to maintain the neighborhood's upper-class residential character. The Court found change in the neighborhood where industry had been excluded, but current conditions made impossible construction of only the mansion-type homes intended by the grantor. *Id.*, 391 Pa. at 85–86, 137 A.2d at 235.

In the instant case, the original grantor may have intended Subdivision 6, like Subdivision 5, to preserve the open, pastoral nature of the land in spite of the housing construction, and to ensure that any fence built would not disturb the land's aesthetic value. The chancellor found that despite this intent, eighteen fences have been built on the seventy lots comprising Crestmont Farms, to enclose swimming pools and dog kennels, including appellees'; significantly, no one formally objected to any of the fences built before appellants'. The chancellor also found that appellants and appellees have children, that appellants have a cat and that many dogs live in the neighborhood.

■ The residential character of Crestmont Farms, with its proliferation of children and pets and the presence of fences built without objection, demonstrates that Subdivision 6 is no longer viable. For the owners of lots in the development, fences now are of value, in securing children and pets and in preventing trespassing, particularly into dangers like backyard swimming pools and kennels. This is most likely why the great majority of Crestmont Farms residents have not objected to fence construction: without it, they bear a higher risk of suits arising out of trespassers' injuries in accessible pools or from unsecured dogs, and of injuries and property damage to themselves from trespassers and roaming dogs. The facts show that Crestmont Farms has changed so that Subdivision 6, to the extent that it controls fence construction, is obsolete. The chancellor erred in concluding that appellants had not carried their burden of proving this change.

The judgment of the Court of Common Pleas of Philadelphia County, directing appellants to remove their present fence and restricting future fence construction, is vacated.

Judgment vacated.

OLSZEWSKI, J., files a concurring opinion.

OLSZEWSKI, Judge, concurring:

I concur in the majority's holding that the lower court's judgment should be vacated. However, reservations concerning aspects of the majority's opinion preclude my joining the opinion.

In its opinion, the majority concludes, inter alia, that the lower court erred in holding that subdivision 6 was unenforceable because no successor to the original grantee existed.[1] The majority, to the contrary, views the successors as the present owners of lots within the subdivision. In addition, the majority holds that each property owner has a

1. Crestmont Farms was at one time a large farm which was conveyed on March 5, 1926 by Thomas C. Coale to Crestmont Farms Improvement Co. The property exists now as a subdivision containing seventy residential plots.

dominant estate over that of his neighbor, and therefore, may enforce valid deed restrictions against his neighbor. Finally, the majority limits this right of enforcement to only those owners whose property adjoins or is adjacent to an alleged offending lot. I do not agree with this portion of the majority opinion.

After carefully studying subdivision 4, 5 and 6, the deed restrictions at issue in this case, two observations may be made: (1) the deed restrictions manifest an intent to retain the open and pastoral nature of the land; and (2) certain responsibilities and duties regarding the maintenance of these restrictive covenants were lodged in the "grantee". It is apparent from the language used, that the grantor planned to have the original grantee, Crestmont Farms Improvement Co., and *its* successors act as a kind of governing body whose duties would include both monitoring and assisting in adherence to the deed restrictions. The majority, however, ignores the plan and instead places the grantee's powers in individual land owners. Clearly, this contravenes the grantor's intent. The following scenarios illustrate the point.

Surely, the majority does not expect a property owner, who wishes to build on his property, to first "submit" plans to be "approved in writing" by his neighbors. Yet under subdivision 6 such approval by the grantee is required.[2] Moreover, is it fair to have one's neighbor have "the right to say and determine which are the front, side and rear lines of any plot," and have this decision be "final and binding"? Again, this is the grantee's power under subdivision 4.[3]

---

2. The majority opinion holds at 969 that the character of Crestmont Farms has changed so that subdivision 6, to the extent that it controls fence construction, is obsolete. However, the grantee's power of approval in subdivision 6 extends to "building(s), fence(s), wall(s) or other structure(s)".

3. The complete text of subdivision 4 provides:
   **Sub-division 4.** No building or part thereof shall be erected or maintained on any part of the said tract closer to any street than 25 feet and at least 15 feet from any side or rear lot line except as hereinafter set forth and except as to eight lots of 50 feet each fronting on Orchard Lane. Covered porches, the floors of which

Portions of the restrictive covenants at issue clearly contemplate the ongoing existence of some sort of central governing body. Evidence in the court below revealed that Crestmont Farms Improvement Co. no longer existed and, further, that no similar body had been set up in its stead. In the absence of such a governing body, those portions of the deed restrictions dealing with the powers reserved to the grantee are no longer enforceable. Therefore, the approval power contained in subdivision 6 is no longer enforceable. The courts of this Commonwealth have made it clear that they will not write into restrictions, through implication, something not clearly expressed therein. *Ratkovich v. Randell Homes, Inc.*, 403 Pa. 63, 169 A.2d 65 (1961).

This disposition leaves intact most of the content of many of the deed restrictions. Only those provisions which specifically and exclusively grant powers to the grantee (or its successors) are rendered unenforceable.

One final point. Subdivision 11 of the deed restrictions reads in pertinent part:

The provisions herein contained shall run, bind the land and shall endure to the benefit of and be enforceable by the Grantee or the owner of any land included in said tract....

Therefore, contrary to the majority's view, valid deed restrictions are enforceable by any and all property owners,

are not higher than the level of the first floor of the building may encroach on such restricted areas by projecting not more than 12 feet. Steps, uncovered porches and terraces, no part of which is more than 3 feet above the level of the first floor of the building may be built and maintained on any part of such restricted areas. Single story bar, low and criel windows not more than 15 feet in height (exclusive of foundations or other support) may encroach on such restricted areas by projection no more than 3 feet, but the total horizontal plans area of such encroachments on one side of a detached building shall not exceed 30 square feet. *The Grantee shall in all cases have the right to say and determine which are the front side and rear lines of any plot and also that amount of set back from said lines necessary to conform to the requirements hereof and the Grantees judgment and determination thereon shall be final and binding.* (Emphasis added.)

not just those whose property adjoins or is adjacent to an alleged offending lot.