Sheets, Appellant, *v.* Pennsylvania Public Utility Commission.

152

Argued April 21, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Anne X. Alpern,* with her *Robert Engel* and *John M. Marshall,* for appellants.

*Jack F. Aschinger,* Assistant Counsel, with him *William J. Grove,* Assistant Counsel, and *Lloyd S. Benjamin,* Acting Counsel, for Public Utility Commission, appellee.

*V. W. Thomas,* with him *Henry G. Wasson, Jr.,* for Duquesne Light Company, intervening appellee.

OPINION BY HIRT, J., July 17, 1952:

Appellant, Ruby I. Sheets, is the owner of a dwelling house in Crafton Heights. She and her family have occupied the first and second floors of the building as their residence since 1918. Over a period of about

20 years she has rented the whole of the third floor, comprising a living room, bedroom and kitchen to a number of families in succession. The status of appellant Anna O. Brandon is about the same. She owns a dwelling house on Prospect Avenue in Pittsburgh. She has occupied the second and third floors as her residence and, since 1933, has rented the first floor of the premises, consisting of two rooms and a kitchen, to various family units. In each instance as to these appellants: the leasing was upon a money rental; a single bathroom and other portions of the house, principally for access, have been used by the owner and the tenant in common; both owners have been domestic customers of defendant Duquesne Light Company for many years, and electric service to the occupants of each house has been through a single meter; prior to June 1949, without exception, both appellants had been billed as residential users under Rate C of the company's tariff No. 9, in effect for a number of years; following an inspection which disclosed a renting of a portion of the premises for a charge, the company notified each of these appellants that the service had been reclassified to comply with Rate V, Rider 12, of the tariff, applicable to combined residential and commercial uses. Thereupon these appellants filed a joint complaint with the Public Utility Commission and they took this single appeal when the Commission after hearing dismissed their complaint.

The reclassification of appellants was not made arbitrarily, as they contend, but only in accordance with the company's existing tariff as interpreted by it when for the first time a commercial use appeared from an inspection of the premises. Under §303 of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS 1143, the company could not lawfully demand or receive a "less rate for any service rendered . . . than that specified in the tariffs . . ." We adopt the following ex-

cerpts from the briefs as an abridged statement of the material provisions of Rate C and Rate V, Rider 12, under the tariff: "Rate C—General Service Small" is available to customers using the company's standard service and having monthly demands of one kilovolt-ampere or less as follows: First 40 KWH at 5 cents; next 60 KWH at 3 cents; excess KWH at 1.7 cents. Demand for residential use is estimated at 66 2/3 volt-amperes for each room used for living purposes. "Rate V—General Service Medium" effective April 1, 1949, is available to consumers having monthly demands in excess of one kilovolt-ampere. The rate in each block is the same as under Rate C except that the excess at 1.7 cents per KWH is limited to an excess not exceeding 1,000 KWH. Billing Demand for residential use is estimated at 66 2/3 volt amperes for each room as under Rate C. Billing Demand for commercial use is the total volt-ampere connected load. Billing Demand for combined residential and commercial use is the sum of the respective Billings Demands. Rider No. 12 is applicable to "Service to Multiple Dwellings". Under the terms of this Rider the blocks of Rate V are to be multiplied by the number of dwelling units rather than by the kilovolt-amperes of demand, which otherwise would be required under Rate V but for the application of the rider. The benefits of Rate C could be enjoyed by two families in a multiple dwelling only by rewiring the building and the installation of separate meters.

A "multiple dwelling" to which Rider No. 12, by its terms, is applicable, means a house occupied by more than one family unit. The company classified more than one family occupancy as a multiple dwelling only when each family had its own separate kitchen. From a practical viewpoint the test is logical. The exclusive use of facilities for the preparation of food usually discloses a separate family group, and accepting a kitch-

en as evidence of that fact is not a strained metonymy. The kitchen is the lineal descendant of the classic hearth, the focal point of family life, where the household gods were enshrined. Families may double up if they live as one unit and use the same facilities, without affecting electric service rates. Clearly the demands of the two appellants on the defendant, insofar as they related to the leased premises were demands for commercial as well as multiple dwelling use, to be calculated on the connected load basis making Rate V, Rider 12, applicable. The use made of the property is an important factor in determining the proper applicable rate. *Brown v. Pa. P. U. C.*, 152 Pa. Superior Ct. 58, 62, 31 A. 2d 435.

The Commission found that the company's application of Rate V, Rider No. 12, to the services rendered appellants for combined residential and commercial uses is a reasonable interpretation of the company's rates as set forth in its tariff. "It is settled that the reasonableness of the classification and of the different rates applicable are administrative questions" for the Commission. *Philadelphia Sub. Water Co. v. Pa. P. U. C.*, 164 Pa. Superior Ct. 320, 64 A. 2d 500. The finding of the Commission on this administrative or factual question is amply supported by the evidence and we therefore may not disturb the finding. *Carpenter v. Pa. P. U. C.*, 141 Pa. Superior Ct. 447, 15 A. 2d 473. Moreover, the company's tariff as applied to multiple dwellings under the classification here involved, is not discriminatory, to the disadvantage of the appellants, in violation of §304 of the Public Utility Law, 66 PS §1144. Quite the contrary. The applicable provisions of the tariff were intended, in some degree to eliminate unreasonable differences in rates between multiple family units served through one meter, and those occupying separate living quarters, though under one roof, when each is served through a separate meter.

The Commission found the rates to be just and reasonable and in accord with §301 of the Act, 66 PS §1141. The fact that the cost to the company of service to these reclassified appellants is no more than under Rate C, is of no moment under the circumstances. Cf. *Alabama Great Southern R. Co. v. U. S.*, 340 U. S. 216, 224, 71 S. Ct. 264. The additional charges for the combined services are not excessive. For the whole year from August 1948 through August 1949 Mrs. Sheets under Rate V, Rider 12, paid $23.29 more than she would have paid under Rate C. Mrs. Brandon under the reclassification paid but $11.92 additional for the same period. The reasonableness of the rates also is an administrative question decided in this case upon sufficient competent evidence. We therefore are bound by the result.

Order affirmed.