Marvin Schreiber, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent. Duquesne Light Company, Intervenor.

6

Argued March 3, 1983, before Judges Rogers, Craig and Doyle, sitting as a panel of three.

*Marvin Schreiber*, with him *Brian C. Schreiber, Schreiber and Schreiber*, for petitioner.

*Kandace F. Foust*, Assistant Counsel, with her *Shirley Rae Don*, Deputy Chief Counsel, and *Joseph J. Malatesta, Jr.*, Chief Counsel, for respondent.

*Larry R. Crayne*, for intervenor.

OPINION BY JUDGE DOYLE, October 21, 1983:

Before this Court is an appeal by Marvin Schreiber (Petitioner) from a decision and order of the Pennsylvania Public Utility Commission (PUC) which upheld the imposition of multiple-dwelling residential rates to Petitioner's property by Duquesne Light Company (Duquesne). We affirm.

The facts in this matter are not in dispute. Petitioner owns and resides in a single family residence located in Fox Chapel Borough. On the same prop-

erty as Petitioner's house is a small, separate, cottage-like structure which, at all times relevant, was occupied rent free by Petitioner's caretaker. The cottage consists of a living room/dining area, kitchen, bedroom and a bath, and is classified as an accessory use under the Fox Chapel zoning ordinance.[1] Electric service to both Petitioner's house and the cottage was supplied through a single meter located in the main residence.

Because the two distinct residential dwelling units were served through a single meter, Petitioner was charged for his use of electricity at a multiple-dwelling residential rate under the applicable Duquesne tariff.[2] In April, 1976, Petitioner began to recalculate his electric bills applying Duquesne's single-family dwelling rate to his electricity consumption and paid only this lesser amount. Petitioner also filed a complaint before the PUC. Following a hearing, the PUC upheld Duquesne's practice and the appeal to this Court followed.

This Court's review of PUC orders is limited to a determination of whether constitutional rights have been violated, an error of law has been committed or whether findings of fact are supported by substantial evidence. *West Penn Power Co. v. Pennsylvania Public Utility Commission*, 57 Pa. Commonwealth Ct. 148, 422 A.2d 230 (1980) *aff'd* on reargument 57 Pa. Commonwealth Ct. 148, 426 A.2d 1312 (1980). Before this Court, Petitioner urges that the PUC erred as a matter of law in considering the cottage a separate dwell-

---

[1] The Fox Chapel zoning ordinance permits only single-family residential uses in the Borough.

[2] In July, 1979, Duquesne discontinued the tariff structure which gave rise to the instant action in favor of a uniform charge per kilowatt-hour. Accordingly, this appeal concerns only the period from April, 1976 through July, 1979.

ing unit when it was classified as accessory to the principal residence under the Fox Chapel zoning ordinance. We disagree. Absent express language to the contrary in the Municipalities Planning Code,[3] the provisions of a borough zoning ordinance are not controlling on a public utility. *See Commonwealth v. Delaware and Hudson Railway Co.,* 19 Pa. Commonwealth Ct. 59, 339 A.2d 155 (1975). Land use classification under a local zoning ordinance does not control the classification of electricity use under a public utility tariff.

Petitioner then urges that the PUC erred in considering the cottage a separate dwelling unit because domestic servants to an employer must be considered part of the integrated single family unit. We again must disagree. The focus of the inquiry is not on the number of *family units* served through a single meter but on the number of separate and distinct *dwelling units* to which power is supplied. In the case at bar the record is clear. The cottage was located some 300-500 feet from the main house. It was equipped with a living room, a bedroom, a bath and a kitchen in which the caretaker prepared meals. Separate kitchen facilities have been held to be indicative of a separate dwelling unit. *See Sheets v. Pennsylvania Public Utility Commission,* 171 Pa. Superior Ct. 151, 90 A.2d 633 (1952). Although the caretaker no doubt served an important role in Petitioner's household, he resided in a *dwelling* that was separate and apart from that of Petitioner, *i.e.* the cottage. There was no error in the PUC's determination that the cottage constituted an additional dwelling unit serviced through the single meter with the main residence.

---

[3] Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10101 through 11202.

## ORDER

Now, October 21, 1983, the order of the Pennsylvania Public Utility Commission in the above referenced matter, adopted October 16, 1980 and entered December 2, 1980 is hereby affirmed.

---

DISSENTING OPINION BY JUDGE CRAIG:

The decision and order of the Pennsylvania Public Utility Commission (PUC) is erroneous because the terms of the Duquesne Light Company tariff at issue make clear that the higher rate, to which petitioner Schreiber objects, is applicable only to service applied through a single meter to a multiple-dwelling *structure,* not when service is applied through a single meter to two or more detached single-family dwellings, as is the case here.

The higher rate tariff provision in question reads as follows:

### SPECIAL PROVISIONS

#### SERVICE TO MULTIPLE-DWELLINGS

Service to a maximum of five dwelling units may be supplied through a single meter under this rate, and when so supplied the following quantities will be multiplied by the number of such dwelling units: [Here follows a description of the multiplier to be used to produce the higher rate.]

The pivotal issue, therefore, is what does Duquesne Light Company's tariff mean by the term "MULTIPLE-DWELLINGS"? Does it apply the higher rate only to a multiple-dwelling in the sense that term is commonly understood—that is, a building contain-

ing more than one dwelling unit within it—or can it be read to apply whenever service is delivered through one meter to more than one dwelling unit, even if each of those dwelling units are, as here, single-family dwellings?

The same tariff answers the question with the language it uses in the description of the basic residential rate, which reads as follows:

RATE RS-RESIDENTIAL SERVICE
Former RATE 'C'
AVAILABILITY

Available to customers using the Company's standard single-phase service through a single meter for all general household purposes, or for combined general household and farm purposes, where such service is supplied directly by the Company to a single-family dwelling or to an individual dwelling unit in a *multiple-dwelling structure*. [Here follows a listing of the kilowatt-hour rates.] (Emphasis added.)

Thus, the tariff itself indicates that a multiple-dwelling *structure* is the concept indicated by reference to multiple dwelling.

The Schreiber situation does not involve any multiple-dwelling structure. To be sure, the main dwelling house and the separate cottage, taken together, do not constitute just one single-family dwelling unit. They are indeed two detached single-family dwellings. Hence, they do not constitute a multiple-dwelling or multiple-dwelling structure.

As the Pennsylvania Supreme Court held in *Pocono Manor Association v. Allen,* 337 Pa. 442, 12 A.2d 32 (1940), construing a deed restriction, "[a]n apartment house or a multiple dwelling house is *not* a cottage." *Id.* at 446, 12 A.2d at 34.

*Sheets v. Pennsylvania Public Utility Commission,* 171 Pa. Superior Ct. 151, 90 A.2d 633 (1952), supports this interpretation, rather than the contrary interpretation for which it is cited. *Sheets* involved a rented dwelling unit in the same building as the owner-occupied dwelling unit. In *Sheets,* the Superior Court was interpreting a tariff rider, also adopted by Duquesne Light Company, very similar in language and purpose to the provision involved here. The Superior Court opinion pointed out that the rider, like the provision here, was labeled "Service to Multiple Dwellings," and the Superior Court proceeded to hold:

A "multiple dwelling" to which Rider No. 12, by its terms, is applicable, means a house occupied by more than one family unit.

*Id.* at 154, 90 A.2d at 635. If the Duquesne Light Company wanted its multiple-dwelling provision to be applicable to a series of two or more detached single-family dwellings, the company should have written the tariff provision clearly to express that concept.

The PUC should have followed the usual rule of interpretation by resolving any ambiguity in the tariff against its author. The PUC erred in this case.